William E. **BURNS**

v.

Bruce G. **SUNDLUN** et al.

No. 91-638-Appeal.

Supreme Court of Rhode Island.

Dec. 7, 1992.

cial review to any party aggrieved by such an administrative proceeding or ruling." (Em-

phasis added.)

Arlene Violet, Barrington, for plaintiff.

Lester Salter, Salter, McGowan, Swartz & Holder, Jeffrey Michaelson, Julius Michaelson, Michaelson & Michaelson, Kary Fay, Sp. Asst. Atty. Gen., Casby Harrison, III, Office of the Governor, Mario Forte, Providence, for defendants.

## OPINION

MURRAY, Justice.

This case is before the court on appeal by the plaintiff, William E. Burns, from a judgment of the Superior Court denying his request for a declaratory judgment. The plaintiff is a resident of Newport, Rhode Island, a registered voter and taxpayer, and a person who voted against off track betting in the general election held in November 1990. The plaintiff challenges the decision of the Division of Racing and Athletics of the Department of Business Regulation (the division) to license two businesses seeking to "simulcast" out-of-state horse racing. The division licensed these facilities pursuant to G.L.1956 (1990 Reenactment) chapter 11 of title 41, as enacted by P.L.1991, ch. 44, art. 61, § 1, which authorizes the division to license already existing gambling facilities to simulcast out-of-state programs. Section 41–11–2(d) also allows a licensed simulcast facility to accept parimutuel wagering.

The plaintiff initiated this declaratory-judgment action, seeking to have the court declare that before the division could license simulcasting at any gambling establishments, the question of the propriety of simulcasting needed to be placed on a public referendum in the city or town where the gambling facilities are located. The plaintiff recognizes that nowhere in the simulcast statute, chapter 11 of title 41, is

there a requirement of public approval by way of referendum. Nevertheless plaintiff argues that chapter 11 of title 41 is subject to the referendum requirements found in G.L.1956 (1990 Reenactment) § 41–10–2, regarding the licensing of off track betting in the city of Pawtucket, and G.L.1956 (1990 Reenactment) § 41–9–4, regarding the licensing of new gambling establishments.

In Superior Court the trial justice allowed the two licensees, Tourism and Development, Inc. and Burrillville Racing Association, to intervene. After a hearing on the merits on September 4, 1991, the trial justice issued a decision rejecting plaintiff's arguments and affirming the licensing decision of the division. On appeal we address three issues raised by the parties: (1) whether plaintiff has standing to bring this suit, (2) whether plaintiff's failure to exhaust his administrative remedies requires dismissal of the suit, and (3) if plaintiff is properly before the court, whether chapter 11 of title 41 requires public approval by way of referendum before the division may license simulcasting in already existing gambling facilities.

## I

■ The first issue we address is that of standing. Under Rhode Island law, a plaintiff has sufficient standing to sue if he or she alleges "an injury in fact resulting from the challenged statute." *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 26, 317 A.2d 124, 129 (1974) (adopting the first prong of the test set forth in *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184, 187 (1970)). In *Blackstone Valley Chamber of Commerce v. Public Utilities Commission*, 452 A.2d 931, 933 (R.I.1982), we described the test for standing by stating, "[the] petitioner must still allege a personal stake in the controversy—his own injury in fact—before he will have standing to assert the broader claims of the public at large."

■ The plaintiff in this case fails to meet this test for standing. The only injury plaintiff asserts is "that he has been denied his right to vote on the establishment of off track betting and the extension of an existing gambling activity." This injury is shared by each and every registered voter in the State of Rhode Island. The plaintiff has failed to allege his own personal stake in the controversy that distinguishes his claim from the claims of the public at large.

This conclusion does not, however, require us to dismiss plaintiff's case. On rare occasions this court has overlooked the standing requirement to determine the merits of a case of substantial public interest. *Sennott v. Hawksley*, 103 R.I. 730, 731–32, 241 A.2d 286, 287 (1968) (allowing taxpayer standing because of the substantial public interest raised by the case). In *Gelch v. State Board of Elections*, 482 A.2d 1204, 1207 (R.I.1984), we allowed a plaintiff to bring suit challenging the candidacy of Vincent Cianci as mayor of Providence. We noted the tendency of this court to confer standing liberally in matters involving substantial public interest. *Id.* We believe plaintiff's lawsuit falls within this line of cases. The plaintiff raises a question of statutory interpretation of great importance to citizens in localities that could become home to gambling facilities seeking to simulcast and invite wagering on out-of-state events. We conclude that the question of whether the public has a right to vote at a public referendum on this issue should be heard by this court.

## II

We next turn to the issue of exhaustion of administrative remedies. The intervenors claim that G.L.1956 (1990 Reenactment) § 41–2–3 provides plaintiff with a right of appeal before the division's hearing board and that plaintiff's failure to pursue this appeal requires this court to dismiss plaintiff's case.

■ It is well-settled law in Rhode Island that a plaintiff aggrieved by agency action must first exhaust his or her administrative remedies before bringing a claim before this court. In *Nardi v. City of Providence*, 89 R.I. 437, 440, 153 A.2d 136,

138 (1959), for example, the complainant challenged the constitutionality of a city zoning ordinance as it applied to his property. We held that enforcing the exhaustion of administrative remedies requirement was appropriate in the *Nardi* case because this court could avoid a needless determination of a matter that could have been resolved by a zoning appeal board's decision to grant a variance or an exception to the zoning ordinance. *Id.* at 448–49, 153 A.2d at 142. *See Golden Gate Corp. v. Town of Narragansett,* 116 R.I. 552, 566–67, 359 A.2d 321, 329 (1976). Our decision in *Nardi* is consonant with two of the primary purposes of the exhaustion of remedies requirement: (1) it aids judicial review by allowing the parties and the agency to develop the facts of the case, and (2) "it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, perhaps avoiding the necessity of any judicial involvement." Schwartz, Administrative Law § 8.33 at 542 (1991). *See Golden Gate Corp.,* 116 R.I. at 566–67, 359 A.2d at 329.

■ Requiring a party to exhaust administrative remedies does not forward these purposes in situations in which an appeal to an administrative review board would be futile. In *M.B.T. Construction Corp. v. Edwards,* 528 A.2d 336, 338 (R.I.1987), we refused to enforce the exhaustion of remedies requirement in a case in which the claimant challenged a city ordinance as invalid on its face. We held that appeal to the agency review board would be futile because the agency lacked the authority to invalidate the ordinance. *Id.* Moreover, since the claimant in *M.B.T. Construction Corp.* challenged the agency action as facially invalid, there was no factual development that could occur at the agency level to assist this court in its judicial review. *See also Golden Gate Corp.,* 116 R.I. at 567, 359 A.2d at 329 (stating that it is inappropriate to forestall judicial review of agency actions challenged as being invalid on their face); *Nolan v. Fitzpatrick,* 9 N.J. 477, 486–87, 89 A.2d 13, 17 (1952) (holding that exhaustion of administrative remedies is not required when a claimant raises a pure question of law since requiring this

issue to go first to an agency board would amount to useless delay).

■ We believe that requiring plaintiff in this case to first take his appeal to the division's hearing board would uselessly delay our judicial review. In asking this court to impose a public-referendum requirement on the licensing of simulcasting, plaintiff raises a pure question of law. There is no factual record that the division's hearing board could develop that would assist us in our decision. In addition the question raised by plaintiff is a question of statutory interpretation outside the agency's area of expertise. Requiring this matter to be heard by the division's hearing board would not forward the purposes underlying the exhaustion of remedies requirement. Accordingly we hold that the exhaustion of administrative remedies requirement does not apply in this case and now turn to the merits of plaintiff's lawsuit.

### III

■ The plaintiff's declaratory-judgment action focuses on three chapters of title 41 of the Rhode Island General Laws. Chapter 11 of title 41, enacted in 1991, specifically covers simulcasting. Section 41–11–2 authorizes simulcasting in already existing gambling facilities, and the statute contains no requirement of public approval by way of referendum.

A second statute, chapter 10 of title 41, was enacted in 1990 and applies to off track betting. Section 41–10–2 provides in pertinent part:

"City elections on establishment of off track betting.—Notwithstanding any other provisions of law, before an off track betting facility shall be established in the city of Pawtucket, the question 'Shall an off track betting facility be located in the city of Pawtucket * * *?' "

"This resolution shall be placed on the ballot at the next general election to be submitted to the qualified electors of the city of Pawtucket, and the state."

The General Assembly enacted a third statute, chapter 9 of title 41, in 1981 and

the statute applies to the establishment of new gambling facilities and activities. Section 41–9–4 provides in pertinent part:

"Town and state election on establishment of facility.—Before a gambling facility shall be established in any town or city, the town council of the town or the city council of the city shall pose * * * the following question: 'Shall a gambling facility and/or activity be established in the town (or city) of _____?' "

The plaintiff relies on the rule of statutory construction that states that statutes which are not inconsistent with each other and relate to the same subject matter are "in *pari materia* and should be considered together so that they will harmonize with each other and be consistent with their general object and scope." *Berthiaume v. School Committee of Woonsocket*, 121 R.I. 243, 249, 397 A.2d 889, 893 (1979) (quoting *Providence Teachers Union, Local 958 v. School Committee*, 108 R.I. 444, 449, 276 A.2d 762, 765 (1971)). The plaintiff argues that the requirements found in chapters 9, 10, and 11 of title 41 are perfectly consistent with one another. The plaintiff further argues that these statutory provisions relate to the same subject matter because they all regard the establishment of gambling facilities. The plaintiff concludes that the doctrine of in *pari materia* controls and that we should require the division to follow the referendum requirements found in §§ 41–10–2 and 41–9–4 before licensing simulcasting in already existing gambling facilities.

We disagree. The doctrine of in *pari materia* does not apply in this case because chapters 9, 10, and 11 of title 41 all deal with different subject matter. On a superficial level plaintiff is correct in asserting that these statutes all relate to the licensing of gambling facilities. However, a closer reading of these statutes demonstrates that they cover different types of gambling facilities, with each statute imposing independent requirements.

We begin by comparing § 41–9–4 with the provisions regarding simulcasting found in chapter 11 of title 41. Section 41–9–4 deals with the establishment of new gambling facilities. In contrast chapter 11 of title 41 covers simulcasting in already existing gambling facilities that have already been the subject of a public referendum. We do not believe that plaintiff can take advantage of the doctrine of in *pari materia* when the target for statutory treatment is different in the two statutes.

We also do not believe that chapters 10 and 11 of title 41 cover the same subject matter. Each of these chapters contains a definition section. Section 41–11–1 defines simulcasting as:

"(a) 'Simulcast' means the live television broadcast of programs from a location outside the state of Rhode Island to licensee of a licensed facility within the state of Rhode Island. The program must be sanctioned and/or licensed in the state of origin."

Section 41–10–3 defines an off track betting facility as:

"(b) Definition of an off track betting facility: An off track betting facility shall be a full service betting facility offering foods and beverage services plus other amenities, containing a minimum of ten thousand square feet (10,000 sq. ft.), providing audio/visual signals of horse racing programs via approved telecommunication and totalizer systems."

Although these two statutory sections overlap, by definition the General Assembly speaks of two different activities. Facilities governed by chapter 11 of title 41 produce two different types of performances that are the subject of wagering. Chapter 11 facilities produce live performances such as dog racing or jai alai for which they already received a license pursuant to G.L.1956 (1990 Reenactment) chapter 3.1 of title 41, and G.L.1956 (1990 Reenactment) chapter 7 of title 41. In addition chapter 11 facilities engage in simulcasting. On the other hand, facilities governed by chapter 10 of title 41 only engage in off track betting. There is no requirement that chapter 10 facilities already be licensed. It is clear from this analysis that the two statutory provisions cover different types of facilities and hence different subject matter. It is equally

clear that the different requirements of the two chapters reflect a judgment by the General Assembly to require voter approval in chapter 10 (establishment of a new off track betting facility) and not require voter approval in chapter 11 of title 41 (permitting simulcasting in an already licensed facility).

Further support for our conclusion that we should not read chapters 10 and 11 of title 41 in *pari materia* is that the two chapters are inconsistent with each another. Section 41–10–2 requires voter approval only in the city of Pawtucket. Yet the licensees in this case are located in Newport and Lincoln. This court will not interpret a statute that on its face limits its application to the city of Pawtucket as also requiring voter approval in other cities and counties in Rhode Island. Accordingly we conclude that chapters 9, 10, and 11 of title 41 are not in *pari materia* and that licensing conducted by the division pursuant to chapter 11 does not require voter approval.

Finally we agree with the Superior Court justice that to adopt the plaintiff's argument would defeat the clear intent of the General Assembly. The state budget enacted for the 1991–92 fiscal year included an income item expected to be received from the state tax imposed on chapter 11 facilities. (91–H7074 Sub. A., As Amended.) This income item indicates that the General Assembly contemplated immediate revenue from the passage of chapter 11 of title 41 and did not expect to wait for public approval before its implementation. Moreover legislators in both the House and the Senate introduced proposed amendments to chapter 11 that would have required voter approval by way of public referendum. The House and the Senate rejected these amendments. *See* House Journal, May 31, 1991, at 42, and Senate Journal, June 6, 1991 at 16–17. This review of the legislative history reveals that the plaintiff's position was on the losing side of the legislative debates. We will not rewrite the legislative bargain and impose a public-referendum requirement on the licensing of simulcast facilities.

For these reasons we deny and dismiss the plaintiff's appeal and affirm the judgment of the Superior Court.