**F.H. BUFFINGTON COMPANY et al.**

v.

**Michael J. HANRAHAN, in his capacity as Administrator of the Second Injury Indemnity Fund.**

No. 92–8–M.P.

Supreme Court of Rhode Island.

March 26, 1993.

Dennis Gannon, Thomas Bruzzese, Warwick, George Furtado, East Providence, for plaintiff.

Judith Scott, and Sharon O'Keefe, Division of Workers Compensation, Providence, for defendant.

OPINION

FAY, Chief Justice.

This case comes before us on the petition for writ of certiorari of Michael J. Hanrahan, in his capacity as the administrator of the Second Injury Indemnity Fund (administrator). The administrator asks us to review the decree of the Workers' Compensation Appellate Division (appellate division) granting reimbursement to F.H. Buffington Company (Buffington) through its insurer, American Universal Insurance Company, from the Second Injury Indemnity Fund for workers' compensation payments made to Daniel Ouellette (Ouellette). We affirm the decree.

The relevant facts are as follows. On September 27, 1983, Ouellette sustained an injury to his back while he was employed at Foxon Packaging Corporation. According to a memorandum of agreement entered into on March 19, 1984, his injury was diagnosed as "acute lumbosacral myofascitis and radiculitis." After his first injury, for which he was paid compensation benefits, Ouellette returned to work in 1984 at several other factories. At the later places of employment he did not experience any back problems.

On April 24, 1986, Ouellette began working at Buffington. Ouellette testified that he informed Buffington about his prior injury the day he was hired. His initial injury and disability was not revealed on the employment application that he had submitted to Buffington.

On November 12, 1986, Ouellette was injured while employed at Buffington. On that day he was treated at the emergency room of Memorial Hospital. During his treatment Ouellette revealed a history of back problems. In a memorandum of agreement the Department of Workers' Compensation characterized Ouellette's injury as "severe low back strain." Under the terms of the agreement Ouellette received compensation for total incapacity.

Buffington directed a request for reimbursement from the Second Injury Indemnity Fund established by G.L.1956 (1986 Reenactment) § 28–37–1, to the director of

the Department of Workers' Compensation. On July 29, 1988, the request was denied because there was no relationship between the pre-existing condition and the new injury. Additionally the director opined that the employee's disability was not serious enough to constitute a hindrance or an obstacle to obtaining employment.

Buffington, through American Universal, filed an employer's petition with the trial court, seeking reimbursement from the Second Injury Indemnity Fund. A hearing before the trial judge commenced on December 15, 1988. After the presentation of testimony the trial judge denied Buffington's petition for reimbursement. The trial judge found that Buffington knew of the previous injury. However, he held that the nature of Ouellette's injury failed to satisfy the pre-existing disability requirement set forth in § 28–37–4(e). He ruled that the purpose of the statute is to encourage employment of disabled employees. The trial judge concluded that at the time of his employment with Buffington, Ouellette was not suffering a disability or loss of earning capacity. In addition Buffington failed to demonstrate that Ouellette's prior injury constituted a hindrance or an obstacle to employment.

On appeal Buffington argued that the trial judge misconstrued the meaning of pre-existing disability. The appellate division agreed with Buffington and reversed the decree of the trial judge. It found that the trial judge's holding was based on an impermissibly restrictive reading of § 28–37–4, subsections (d) and (e). The appellate division held that the trial judge's interpretation of pre-existing disability would limit the statute's protection to prospective employees who were completely disabled when they applied for work. The appellate division concluded that the Legislature intended to equip the fund with a broader remedial mission. It opined that the statute was premised on returning previously injured workers to the workplace to reduce compensation costs, which action in turn would reduce the expenses borne by all employers from the workers' compensation system. Therefore, the appellate division ruled that "the mere fact that an employee

has sustained a prior compensable injury and has been the recipient of compensation benefits * * * places upon him a stigma that per se ' * * * constitute(s) a hindrance or obstacle to obtaining employment.' " We agree with the appellate division's analysis.

The sole issue presented in this matter is whether Ouellette had a pre-existing disability that would entitle Buffington to relief under § 28–37–4. The specific statutory provisions before us read:

"(d) In order to qualify under this section for reimbursement from the special fund, the employer must establish by written records that it had knowledge of the preexisting disability at the time that the employee was hired, or if that knowledge was acquired thereafter, that the employee was retained in employment after the employer acquired that knowledge; Provided, however, That if the employee fails to disclose a prior injury for which compensation was paid, the employer shall qualify for reimbursement under this section.

"(e) As used in this section, preexisting disability means any disability, due to work-related injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed." Section 28–37–4.

■ The administrator asserts that the appellate division erred in its broad construction of the provisions of the Second Injury Indemnity Fund. This court is responsible for determining the Legislature's intent on questions of statutory construction. *In the Matter of Almeida,* 611 A.2d 1375, 1382 (R.I.1992). Our analysis begins with the wording of the statute. In construing statutory language, we have it as our duty to effectuate what the Legislature intended and give it a meaning consistent with its policies or obvious purposes. *Gryguc v. Bendick,* 510 A.2d 937, 939 (R.I. 1986).

The Second Injury Indemnity Fund was created in the nature of a trust fund. *Gil-*

*bane Co. v. Poulas*, 576 A.2d 1195, 1196 (R.I.1990). Both statutory and decisional law mandate the liberal construction of its provisions. *Id.;* § 28–37–4(a). The policy underlying the fund promotes employment by assisting both employers and employees. Contrary to the administrator's assertion, the Legislature intended the fund to extend beyond job applicants who happen to be incapacitated at the time of hiring. The fund was created to minimize the chance that any worker might be denied employment because of a prior injury. Accordingly the purpose of the fund is "to encourage the employment of disabled employees by limiting the liability of employers for compensation and medical charges" as a consequence of injuries sustained during previous employment. Section 28–37–4(a). To achieve its objectives, the fund provides financial incentives to employers who may otherwise be unwilling to take on employees because of physical handicaps.

█ To effectuate the Legislature's policy, we interpret the term "pre-existing disability" as referring to a prior compensable injury sustained by an employee who has been the recipient of compensation benefits. We agree with the appellate division's holding that such a history of disability constitutes a hindrance or an obstacle to employment and that, pursuant to § 28–37–4, a new employer can be reimbursed from the Second Injury Indemnity Fund.

█ The administrator also contends that when construing § 28–37–4(e), we must read the statute in pari materia with G.L.1956 (1986 Reenactment) § 28–33–18.3, as amended by P.L.1992, ch. 31, § 5. We acknowledge that § 28–33–18.3 defines "material hindrance" for the purposes of partial incapacity benefits. We decline, however, to limit access to workers' compensation benefits by retroactively applying statutory amendments. *Donahue v. Washburn Wire Co.*, 492 A.2d 152, 153 (R.I.1985). Absent the Legislature's express intent, we shall not depart from the rule of prospective statutory construction. *Id.* at 154.[1]

█ The administrator further avers that Buffington has not satisfied the nexus requirement of § 28–37–4(a). The administrator argues that Buffington failed to prove that Ouellette's second injury aggravated a pre-existing condition and merged with it to cause greater disability. The appellate division summarily dismissed this contention. Our review of the appellate division's factual findings is limited. In the absence of fraud, its findings are conclusive and may not be disturbed on appeal if any competent evidence exists to support them. *Hughes v. Saco Casting Co.*, 443 A.2d 1264, 1266 (R.I.1982). The record indicates that Ouellette was examined by five physicians who rendered three different diagnoses. From their testimony we find

---

**1.** The Legislature may have intended to make the pertinent part of its 1992 amendment to G.L.1956 (1986 Reenactment) § 28–33–18.3 retroactive. *See* P.L.1992, ch. 31, § 31. Rights to workers' compensation benefits are determined by the statutes existing at the time of the injury. *Donahue v. Washburn Wire Co.*, 492 A.2d 152, 153 (R.I.1985). We shall apply statutory provisions retroactively only when it is the express intention of the Legislature. *Id.* at 154.

In the final section of the 1992 workers' compensation amendments, the Legislature attempted to set forth those sections that it intended to be applied retroactively. It did so by listing the provisions that are not retroactive. Section 28–33–18.3 is excluded from the list of statutes that are not retroactive, but the list is preceded by a muddled discussion of which other provisions are not retroactive. It is not possible therefore to attach an express intent to the Legislature's explanation and determine which provisions are retroactive.

However, should the 1992 act be amended to become retroactive, the rule of statutory construction known as in pari materia will itself defeat the administrator's contention. The rule states that "statutes which are not inconsistent with each other and relate to the same subject matter * * * 'should be considered together so that they will harmonize with each other and be consistent with their general object and scope.'" *Burns v. Sundlun*, 617 A.2d 114, 118 (R.I.1992). In this matter the administrator seeks to graft a statute from one chapter in title 28 onto another chapter. Chapter 37 sets forth all the provisions of the Second Injury Indemnity Fund. Chapter 33 describes the extent of an employee's workers' compensation benefits. As we held in *Burns*, the doctrine of in pari materia does not apply when the subject matter of the chapters in issue differ. 617 A.2d at 118. As a result, we disagree with the administrator.

there was ample and competent evidence upon which the appellate division could rest.

Our review of the record brings us to the conclusion that Buffington is within the class of new employers that is entitled to tap the reimbursement provisions of § 28–37–4. We therefore deny the petition for certiorari. The writ heretofore issued is quashed, and the decree of the appellate division is affirmed. The papers in this case are remanded to the appellate division with our decision endorsed thereon.