DECISION
This matter is before the Court on cross motions. The Petitioner, Lime Rock Fire District, Inc. (Lime Rock or Petitioner), seeks summary judgment on its Petition for Declaratory Judgment. Lime Rock argues that its firefighters are no longer represented by the IAFF, Local 3023, AFL-CIO (Union or Respondent) because of the union's dormancy and lack of representation among the Lime Rock employees, and accordingly, seeks a declaration of rights pursuant to G.L. 1956 chapter 30 of title 9, the Uniform Declaratory Judgments Act (UDJA). The Union has filed an objection thereto. The Union seeks to dismiss the Petition for Declaratory Judgment for lack of subject matter jurisdiction. The Union argues that this Court is without jurisdiction because Lime Rock has not exhausted all administrative remedies at its disposal. Lime Rock has timely filed an objection thereto. Jurisdiction is pursuant to G.L. 1956 §§ 8-2-13, 8-2-14, Super. R. Civ. P. Rule 56 and Rule 12(b)(1).
 FACTS AND TRAVEL
Lime Rock, located within the Town of Lincoln, Rhode Island, has provided fire protection to the residents of the Lime Rock area since approximately 1915. (Lime Rock Pet. ¶¶ 2-3.) From its inception, Lime Rock has been comprised solely of citizen volunteers. (Lime Rock Pet. ¶¶ 3, 7.) On or about April 1964, in response to a request made by Lime Rock to the Rhode Island General Assembly, Lime Rock incorporated and began to receive funding from the state in order to furnish the town with full-time paid firefighters. (Lime Rock Pet. ¶¶ 5-8.) Between April 6, 1964, and on or about July 1986, Lime Rock — through a vote by the taxpayers on six separate occasions — apportioned the necessary monies for six full-time firefighters who began work soon after each town apportionment vote. (Lime Rock Pet. ¶¶ 8-15.)
On January 20, 1987, the Union became the exclusive collective bargaining agent for the original five full-time firefighters employed with Lime Rock. (Lime Rock Pet. ¶¶ 17.) Both the Union and Lime Rock executed a "Consent Election Agreement by Comparison of Signatures" — which was then approved by the Rhode Island State Labor Relations Board (Board) — providing the five full-time firefighters with membership in the Union. (Lime Rock Pet. ¶ 17, Def. Mot. 1.) Subsequently, the two parties entered into two collective bargaining agreements (CBA or Agreement), the second of which lasted from March 1, 1990 to February 29, 1992. (Lime Rock Pet. ¶¶ 18-19.) As of the expiration of the second collective bargaining agreement in February 1992 it covered six full-time firefighters. (Lime Rock Summ. J. Memo. 2.)
On or about April 1992, the taxpayers served by Lime Rock voted to strike from the annual budget those monies providing the salaries of the full-time firefighter's represented by the union, resulting in their layoff. (Lime Rock Pet. ¶ 21, Def s Mot. 2.) The union then filed an unfair labor charge with the Board which found in favor of the Union and entered an order in its favor. (Lime Rock Pet. ¶¶ 23-24, Def.'s Mot 2.) Lime Rock appealed the Board's decision to the Rhode Island Supreme Court, following a judgment by the Superior Court affirming the Board's decision. (Lime Rock Pet. ¶¶ 25-27.) On March 28, 1996, the Supreme Court quashed the decisions of both the Board and the Superior Court. The Supreme Court held that the Union should have brought its unresolved issues to arbitration in accordance with the statutory scheme outlined in G.L. 1956 chapter 9.1 of title 28, and by failing to do so, had waived that right.
In November of 2002, the Union — through one of the Lime Rock employees at that time — filed with the Board a Petition for Unit Clarification and/or Accretion, seeking to bring within the umbrella of the Union thirty-one (31) Lime Rock employees. (Defi's Mot. 2-3.) Lime Rock filed a timely objection arguing essentially the same position it does in the current action. (Defi's Mot. 3.) Lime Rock then filed an action for equitable and injunctive relief (PC 03-1976), requesting the Superior Court to issue a temporary restraining order and enjoin the Board from conducting a hearing on the petition. (Defi's Mot. Ex. 8.)[1]
Lime Rock contends that there is no longer a relationship between the Union and the firefighters. Specifically, Lime Rock notes that there has been little or no contact — with obvious exception to the Petition for Unit Clarification and/or Accretion in 2002 — from the Union since the Supreme Court decision in 1996. Furthermore, Lime Rock points to the fact that the union has allegedly not requested "an opportunity to negotiate a new CBA," nor has it sought to enforce the terms of the old CBA as they pertain to the former six members of the union. (Lime Rock Summ. J. Memo 3.) Additionally, Lime Rock asserts that because there are no current members of the Lime Rock employees who are also members of the Union, the Board's administrative powers cannot provide an appropriate remedy. Lastly, Petitioner argues the within facts trigger this Court's power under the Uniform Declaratory Judgments Act, G.L. 1956 §§ 9-30-1 to 9-30-16.
The Union moves to dismiss Lime Rock's complaint, arguing that this matter is best suited, and mandated by statute and case law, to be heard by the Board. In its Motion to Dismiss, the Respondent notes the procedural framework created by statute through which, as it alleges, this claim must proceed before any possible Superior Court review. (Defi's Mot. 6.) The Union contends that decisions from our Supreme Court, as well as the provisions in G.L. 1956 chapters 7 and 9 of title 28 and chapter 35 of title 42, grant the Board original jurisdiction over this claim in order to exhaust all administrative remedies. The existence of the administrative level of review, the Union argues, would preclude the existence of Lime Rock's Petition for Declaratory Judgment in this Court.
Lime Rock filed its Petition for Declaratory Judgment on August 12, 2005, to which the Union responded on January 5, 2006. On July 31, 2006, Lime Rock filed a Motion for Summary Judgment. On the same day, the Union filed its Motion to Dismiss for lack of subject matter jurisdiction. Lime Rock objected to the Union's motion on September 1, 2006.
 ANALYSIS I. Respondent's Motion To Dismiss for Lack of Subject MatterJurisdiction
The Union argues that this Court does not have subject matter jurisdiction because Lime Rock's claim is governed by several statutes — G.L. 1956 chapter 7 of title 28, the Labor Relations Act (LRA); chapter 9.1 of title 28, the Firefighters' Arbitration Act (FFAA); and chapter 35 of title 42, the Administrative Procedures Act (APA) — thereby requiring that this matter be dismissed. Alternatively, Lime Rock contends that this Court may grant declaratory relief regardless of any administrative procedures, and in the alternative, because the relief requested falls outside the above statutes.
It is well settled that an aggrieved party must exhaust all administrative remedies before resorting to the judicial system for relief. Burns v. Sundlun, 617 A.2d 114, 116 (R.I. 1992). The exhaustion rule mandates the withholding of judicial review "until the administrative process has run its course." U.S. v. Western PacificRailroad Co., 352 U.S. 59, 63 (1956); R.I. Employment Security Alliancev. Department of Employment Training, 788 A.2d 465, 467 (R.I. 2002).[2] The exhaustion of all administrative remedies serves two important roles: it "aids judicial review by allowing the parties and the agency to develop the facts of the case," and it "promotes judicial economy by avoiding needless repetition of administrative and judicial fact finding, perhaps avoiding the necessity of any judicial involvement." Almeida v. Plasterers' and Cement Masons' Local 40 PensionFund. 722 A.2d 257, 259 (R.I. 1998); Golden Gate Corp. v. Town ofNarragansett 359 A.2d 321, 329 (1976); Schwartz, Administrative Law
§ 8.33 at 542 (1991).
Pursuant to the APA, "any person . . . who has exhausted all administrative remedies available to him or her within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review" of that order. G.L. 1956 § 42-35-15(a). A contested case is defined as "a proceeding . . . in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." G.L. 1956 § 42-35-l(c) (emphasis added). Therefore, for the exhaustion rule to preclude judicial review of a matter, there must first be a legal requirement that an agency review and decide the matter (a contested case), and the aggrieved party must then bypass other avenues of relief within the agency by filing suit in the courts. However, if a case does not constitute a "contested case," then a party is not required to exhaust any administrative remedies and may seek judicial review instead. Bradford Assocs. v. Rhode Island Div. of Purchases,772 A.2d 485, 489 (R.I. 2001); Property Advisory Group v. Rylant 636 A.2d 317,318 (R.I. 1994).
Here, the Union has not directed this Court to any provision in the APA, LRA, or FFAA which requires a hearing on the specific factual situation presented. The jurisdiction given to the Board in both the LRA and the FFAA concerns disputes relating to and arising out ofcurrent and ongoing relationships between an employer and a union. The two parties here clearly do not have the relationship contemplated by the statute. Their last collective bargaining agreement expired over fourteen years ago, and neither party has sought to re-engage in negotiations. Further, there are no current employees of Lime Rock who are members of the Union. The FFAA and LRA contain provisions where, as indicated by the Union in their memorandum, an employer or employee may take action to sever or alter the relationship with the union. G.L. 1956 §§ 28-9.1-5, 28-9.1-7; G.L. §§ 1956 28-7-9, 28-7-16, 28-7-29. The Board has also promulgated rules pertaining to the severability of the employer-union or employee-union relationship. 16 020 CRIR 001-44, 45. Either method assumes there are employees who are current members of the union, not the case here.
Moreover, after the 1996 Supreme Court decision involving the labor dispute between these two parties, neither party sought to revive the dispute in Superior Court on remand.[3] In fact, the Supreme Court in that matter held that the Union should have gone to arbitration, but, in failing to do so according to the statute, it had waived that option, and seemingly left the union without a directive, statutory or judicial, on how to proceed. Lime Rock Fire District v. Rhode Island State LaborRelations Bd., 673 A.2d 51, 54 (R.I. 1996). As such, there is no statutorily mandated right to a hearing.
Furthermore, assuming arguendo that the within constituted a contested case, when an appeal thereof to an administrative review board would be futile or uselessly delay judicial review, the Court may forego application of the exhaustion rule. Burns, 617 A.2d at 117; M.B.T.Construction Corp. v. Edwards, 528 A.2d 336, 228 (R.I. 1987). Our Supreme Court articulated in Almeida that the exhaustion rule provides for fact development and the avoidance of extraneous fact finding at the judicial level. Almeida, 722 A.2d at 259; Burns, 617 A.2d at 117. Our Supreme Court noted that if there is essentially little or no material fact-finding at hand, then remanding or dismissing results in useless delay. Burns, 617 A.2d at 117 (citing Nolan v. Fitzpatrick, 89 A.2d 13,17 (N.J. 1952)).
In Burns, the Rhode Island Supreme Court cited the lack of need for factual development at an agency hearing as the primary reason for a reviewing court not dismissing a suit for lack of exhaustion of administrative remedies. The Court cited case law indicating that without a need for factual development, there could be no need for exhaustion. Burns, 617 A.2d at 117. When a court is called upon to answer a question of law, dismissal for failure to exhaust administrative remedies "would uselessly delay [its] judicial review." Id Here, were the instant matter a contested case, there would be no factual record the Board could develop that would assist in this decision. As such, this case presents a question of law ripe for judicial review. M.B.T. Construction Corp, 528 A.2d at 338 (refusing to wield exhaustion of remedies requirement because agency lacked authority to answer question of law).
Additionally, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Super R. Civ. P. Rule 57. Specifically, even the failure to exhaust all administrative remedies provided to a party does not preclude a petition for declaratory relief as is presented in the instant case. See generally. Frank Ansuini, Inc. v. Cranston.107 R.I. 63, 264 A.2d 910 (1970) (party seeking invalidity of city planning commission regulation need not exhaust administrative remedies before proceeding under UDJA); Taylor v. Marshall, 119 R.I. 171, 376 A.2d 712
(1977) (party seeking declaration of rights under ordinance not precluded despite existence of administrative remedies); Town ofTiverton v. Fraternal Order of Police. Lodge 23. 118 R.I. 160,372 A.2d 1273 (1977) (Union seeking interpretation of statute as it related to collective bargaining agreement need not exhaust administrative remedies). The UDJA is said to permit the trial justice to "facilitate the termination of controversies." Capital Properties, Inc. v.State, 749 A.2d 1069, 1080 (R.I. 1999) (quoting Fireman' Fund InsuranceCo. v. E.W. Burman, Inc., 120 R.I. 841, 845, 391 A.2d 99, 101 (1978)). The decision to use the powers given under the UDJA is "addressed to the sound discretion of the trial justice." Hagenberg v. Avedisian,879 A.2d 436, 441 (R.I. 2005). The statute declares that the scope and power conferred are to be "liberally construed and administered." Section § 9-30-12. Section 9-30-1 states the scope of the UDJA as follows:
 "The superior court or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."
The Superior Court's power to construe is defined in § 9-30-2 as:
 "Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."
In the instant matter, Lime Rock seeks a judicial determination of its rights, and the rights of the Union. As a party whose rights are affected by a contract, albeit expired, and several statutes, Petitioner is entitled to bring this declaratory judgment action despite the possibility that other administrative remedies might exist. As noted earlier, there would be no benefit to dismiss, in effect remanding this matter to the Board, because this Court has before it all material facts necessary to make a determination of the rights between Lime Rock and the Union. Given the futility in dismissing this matter and the useless delay that would result, this Court exercises its power over Petitioner's request pursuant to the Uniform Declaratory Judgments Act.
II. Lime Rock Motion for Summary Judgment
Summary judgment is a "drastic remedy to be granted sparingly only when a review of all pleadings, affidavits, and discovery materials properly before the court demonstrates that no issue of fact material to the determination of the lawsuit is in genuine dispute." Superior BoilerWorks, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 631 (R.I. 1998). If no genuine issue of material fact exists, the court must then determine whether the moving party is entitled to judgment as a matter of law.Alfano v. Landers, 585 A.2d651,652(R.I. 1991).
A party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial. Accent Store Design, Inc. v.Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996). "A party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macéra Brothers of Cranston, Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning AutoParts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almac's, Inc.,623 A.2d 971, 972 (R.I. 1993).
Lime Rock moves for summary judgment on several factual arguments relating to the dormancy of the Union over the last ten or more years. This Court need only consider those facts that are material to deciding whether Lime Rock is entitled to judgment as a matter of law. Lime Rock points out that since the expiration of the second collective bargaining agreement in 1992, there has been no negotiation of a new CBA, nor has there been a request to initiate such a negotiation. Lime Rock also notes there are no current employees who are members of the Union. Further, Petitioner argues that since the 1996 labor dispute case — appealed to our Supreme Court and seemingly ignored on remand by the Union — there has been neither an unfair labor practice claim nor any indication that there will be.
The Respondent objects to Lime Rock's motion by citing various statutory provisions relating to the collective bargaining process for firefighters, namely section 9.2 of title 28, the FFAA. The Union argues that the relevant statutory procedures require a majority vote of full-time firefighters in order to sever the Union's representation. Respondent points out that this has never occurred, and therefore, the relationship, by law, exists in such open-ended fashion until affirmative action is taken by the firefighters. In addition, the Union proffers the argument that Lime Rock's motion fails because it is not ripe, due to the earlier Supreme Court decision between these parties, as well as relevant portions of the FFAA. The Union cautions this Court that any decision it would make would be nothing more than an advisory opinion.
A collective bargaining agent is chosen by the majority of the employees who wish to be represented. Section 28-7-14 of the Labor Relations Act provides in pertinent part:
 "Exclusive representation of employees. — Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for those purposes, or by the majority of the employees voting in an election . . . shall be the exclusive representative. . . ." (Emphasis added.)
More specific to this matter, G.L. 1956 § 28-9.1-5, the Firefighter's Arbitration Act, provides in relevant part:
 "Recognition of bargaining agent. — The labor organization selected by the majority of fire fighters in any city or town shall be recognized by the city or town as the sole and exclusive bargaining agent for all members of the city or town fire department unless and until recognition of the labor organization is withdrawn by a majority of the fire fighters." (Emphasis added.)
With respect to labor law, this Court has consistently looked to federal law for guidance.[4] DiGuilio v. Rhode Island Broth, ofCorrectional Officers, 819 A.2d 1271, 1273 (R.I. 2003); MacQuattie v.Malafronte, 779 A.2d 633, 636 n. 3 (R.I. 2003). There exists a large body of federal law addressing the immediate situation where an employer desires that the incumbent union no longer represent the employees, commonly referred to as a "withdrawal of recognition." Under federal law, various presumptions concerning the existence of majority support govern whether an employer may discontinue its employees' relationship with the union. Auciello Iron Works, Inc. v. NLRB, 571 U.S. 781, 785-86
(1996); Fall River Dyeing Finishing Corp. v. NLRB, 482 U.S. 27, 38
(1987). First, a union is "usually entitled to a conclusive presumption of majority status for one year following" certification as the representative. Fall River Dyeing, 482 U.S. at 37. Second, a union is "entitled . . . to a conclusive presumption of majority status during the term of any collective-bargaining agreement, up to three years."Auciello Iron Works, 571 U.S. at 786; see also NLRB v. Burns Int'lSecurity Services, Inc., 406 U.S. 272, 290 n. 12 (1972). These first two presumptions exist to create and maintain stability in the collective bargaining relationship. Fall River Dyeing, 482 U.S. at 38. Third, "at the end of the certification year or upon expiration of the collective bargaining agreement, the presumption of majority status becomes a rebuttable one." Auciello Iron Works, 571 U.S. at 786; see alsoNLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 778 (1990). The presumption is overcome if the employer shows "at the time of the refusal to bargain, either (1) the union did not in fact enjoy majority support, or (2) the employer had a `good-faith' doubt, founded on a sufficient objective basis, of the union's majority support."Curtin Matheson, 494 U.S. at 778 (emphasis in original). The employer must prove either of the two prongs above by a preponderance of the evidence. Levitz Furniture Co. of the Pac, 333 N.L.R.B. 717, 725 (2001).
The above dual-prong test was first elucidated in Celanese Corp., 95 N.L.R.B. 664 (1951). The word "doubt," as used by the National Labor Relations Board (NLRB) at that time, generally required a showing of "disbelief," not merely uncertainty. Levitz, 333 N.L.R.B. at 721. Since 1951, the NLRB received much criticism for its wavering and seemingly misguided application of the Celanese standard. Id at 722. Finally in 1998, the United States Supreme Court addressed the muddied waters of employer withdrawal of recognition in Allentown Mack Sales and Service,Inc. v. NLRB, 522 U.S. 359, 364-80 (1998), a decision that had two major impacts on labor law. First, the Court interpreted the word "doubt," as used in the Celanese standard, to mean "uncertainty," as opposed to "disbelief." Levitz, 333 N.L.R.B. at 722 (noting the new standard as being less stringent). Second, the Court gave the NLRB "substantial flexibility in this area to devise a scheme," posing a subtle request to the NLRB to refine this area of labor law with regard to incumbent unions. Id The NLRB reacted in the following manner:
 ". . . we hold that an employer may rebut the continuing presumption of an incumbent union's majority status, and unilaterally withdraw recognition, only on a showing that the union has, in fact, lost the support of a majority of the employees in the bargaining unit. We overrule Celanese and its progeny insofar as they hold that an employer may lawfully withdraw recognition on the basis of a good-faith doubt (uncertainty or disbelief) as to the union's continued majority status." Id at 725 (excising the "good-faith uncertainty" prong of the Celanese decision).
Since 2001, the NLRB has used the Levitz approach when confronted with this issue. See Siemens Building Technologies, Inc., No. 91, 2005 N.L.R.B. LEXIS 519, at *6-7 (2005); Lexis of Concord, Inc., No. 94, 2004 N.L.R.B. LEXIS 697, at *6 (2004); Littler Diecasting Corp. and Int'lUnion, 334 N.L.R.B. 707, 708 (2001); Alcon Fabricators, 334 N.L.R.B. 604, 604 n. 6 (2001). Consequently, without a showing — through a vote, petition, a series of correspondence, or otherwise — that an actual majority of employees rejects the union, the employer may not unilaterally withdraw its recognition of the union. Despite the unequivocal overruling of Celanese by the NLRB, some decisions have still applied both tests.[5] For the purposes of completeness, this Court will do the same.
Applying the Levitz standard, Lime Rock has met its burden. Since 1992, there have been zero unionized employees. The only Lime Rock firefighters to ever be members of the Union were laid off fourteen years ago, and their reinstatement, after the 1996 Rhode Island Supreme Court decision, seems to have become an afterthought. An employer must continue to bargain with the union under the continuing presumption of majority support "unless an employer has proof that the union has actually lost majority support. . . ." Levitz, 333 N.L.R.B. at 725. Here, it is impossible and unnecessary for Lime Rock to show that a majority of its unionized employees reject the Union because there is no viable method of polling or voting due to the total absence of employee voters. In many instances, proof by letters to the union or employer, petitions signed by employees, and/or actual votes sustain the burden for an employer's desire to withdraw recognition of the union. See Lexusof Concord, No. 94, 2004 N.L.R.B. at *6; Levitz, 333 N.L.R.B. at 725. Because there are no union employees working for Lime Rock, there is no possibility for votes, petitions, or polls, and therefore, there can be no majority support for the Union to garner. Accordingly, Lime Rock has satisfied the Levitz test and successfully withdrawn recognition of the Union.
Pursuant to the pre-Levitz standard of review, as refined by the Supreme Court in Allentown Mack, withdrawal of recognition is permissible when the employer possesses a genuine, reasonable uncertainty about whether the union enjoys continuing majority support.Allentown Mack, 522 U.S. at 367. Such uncertainty is proven most often, including in Allentown Mack, by actual statements of unionized employees. Id; Levitz, 333 N.L.R.B. at 728-29. Since the introduction of this avenue of withdrawal in Celanese, the NLRB has enunciated divergent opinions as to what particular objective facts create a viable claim of withdrawal. In Levitz, the NLRB noted cases sanctioning withdrawal upon union-derogating statements by employees and union stewards.Levitz, 333 N.L.R.B at 728-29. The NLRB also specifically exempted "indications of union inactivity" as an allowable factor that could lead an employer to be uncertain about a union's majority support. Id; seealso Community Health Services, Inc., No. 33, 2004 N.L.R.B LEXIS 366, at *26-29 (2004) (stating use of union inactivity as basis for withdrawal "unfounded in Board law[ ]"). On the other hand, and in the face of such strong language, the NLRB has also expressly used union inactivity as a factor, among many, to be weighed in the assessment of an employer's genuine and reasonable uncertainty of majority support for a union.Juan Hernandez Trucking, 2003 N.L.R.B G.C.M. LEXIS 11, at *9-10 (2003);Taft Coal Co., 321 N.L.R.B 605, 609-10 (1996) (stating that the NLRB "has, on occasion, considered a period of inactivity by the [u]nion in determining whether the employer had a good-faith doubt. . . .");Greyhound Lines, Inc., 1993 N.L.R.B G.C.M. LEXIS 1, at * 11-12 (1993);Southern Wipers, Inc., 192 N.L.R.B 816, 816 (1971). This Court is of the opinion that the inclusion of all objective factors, including union inactivity, is the better reasoned approach, and therefore, will consider Respondent's inactivity in making this decision.
In this case, the Union has not acknowledged, much less represented, any employee of Lime Rock since at the earliest, the 1992 lay-offs, and at the latest, the 1996 Rhode Island Supreme Court decision. Consequently, the Union's contention that it has not abandoned either the workers of Lime Rock, or its position as their collective bargaining agent is not compelling. When considering the facts in this case — no collective bargaining agreement since 1992; no requests to negotiate an agreement; no employees in the union since 1992 or 1996 up to and including present; no pursuit of further judicial remedy following the 1996 Rhode Island Supreme Court decision; no grievances filed against Lime Rock since 1992 up to and including present — it becomes clear that both the Union and Lime Rock do not consider their relationship ongoing and have not since, at the very latest, 1996.[6] Periods of inactivity lasting just six months have persuaded the NLRB in the past to sustain a withdrawal of recognition. Southern Wipers, 192 N.L.R.B at 816. In this case, the period of inactivity spans a much greater time frame, beginning possibly in 1992 and certainly in 1996 — at the very least, a ten-year period during which no single employee of Lime Rock was represented by the Union and when the Union had barely any contact with the employer. As long as the Union's inactivity is not due to any unfair bargaining by the employer, it may be considered when evaluating the employee-union relationship and whether there is majority support.Taft Coal Co., 321 N.L.R.B at 609-10. Here, it is noteworthy that the Union has filed no grievances, other than the initial complaint regarding the layoffs in 1992. Accordingly, this Court finds with respect to Lime Rock's conduct that it has acted in accordance with Rhode Island labor law and committed no unfair labor practice violations which would preclude withdrawal of recognition.
Whether this case is analyzed under the longstandingCelanese approach, or under the more modern Levitz case, this Court comes to the same conclusion. The evidence presented clearly shows that Lime Rock is entitled to independence from the Union; that the Union's representational relationship with Lime Rock has ceased; and Lime Rock's present relationship with its employees does not fall within the dictates of § 28-7-13, "Unfair labor practices."
 CONCLUSION
After reviewing the evidence and the memoranda submitted by the parties, this Court denies Respondent's motion to dismiss for lack of subject matter jurisdiction, and grants Petitioner's motion for summary judgment on its Petition for Declaratory Judgment. Counsel shall submit an Order consistent with this Decision.
[1] It is unclear what, if anything, occurred as a result of that filing because in August of 2003, the Board conducted a hearing on the petition. It is unknown as to what action, if any, the Board took as a result of the petition.
[2] See supra, at 7-8 of this opinion (outlining exception to exhaustion of administrative remedies).
[3] See Lime Rock Fire District v. Rhode Island State Labor RelationsBd.. 673 A.2d 51 (R.I. 1996). As a result of the lay-offs in 1992, the Union filed an unfair labor charge with the Board which found for the Union. Eventually, the Rhode Island Supreme Court reversed the Board, holding the judicial system was without jurisdiction because, according to G.L. 1956 § 28-9.1-7, the matter should have gone to arbitration.Id. at 53-54. The Supreme Court quashed both the decision of the Board and that of the Superior Court. Id.
[4] Despite this clear and longstanding principle in Rhode Island, the Union's brief admonishes Lime Rock for citing "solely to federal precedent. . . ." (Def's Summ. J. Obj. 5.) However, ironically, in its Memorandum, the Union repeatedly cites federal precedent to support its argument. This Court notes that the DiGuilio and MacQuattie cases make it abundantly clear that, much like other areas of Rhode Island law, federal precedent serves as the prevailing law when there is insufficient state case law available, and is equally available to both parties.
[5] While the United States Supreme Court has interpreted and used theCelanese standard since its creation, the NLRB has the power to change the interpretation and application of its own opinions and of the National Labor Relations Act. Allentown Mack. 522 U.S. at 364, 374-75. "Courts must defer to the requirements imposed by the Board if they are `rational and consistent with the Act.'" Fall River Dyeing,482 U.S. at 42. The NLRB has promulgated virtually all of its legal rules through adjudication, and so long as those rules are the product of "reasoned decisionmaking," courts will defer to them. Allentown Mack,522 U.S. at 374.
[6] In addition, www.local3023.org, Respondent's website, is conspicuously lacking any reference to Lime Rock. Lime Rock is Station 3 within the town of Lincoln, Rhode Island. The Union's website does not list any contact information for Station 3, nor does it list stewards or officers for the Union from Station 3. The one possible connection between the Union and Lime Rock is an internet link found on the website. However, the internet link takes the user to a dormant web page.