673 A.2d 51 (1996)
LIME ROCK FIRE DISTRICT
v.
RHODE ISLAND STATE LABOR RELATIONS BOARD et al.
No. 94-548-M.P.
Supreme Court of Rhode Island.
March 28, 1996.
John A. MacFadyen, III, Daniel V. McKinnon, Providence, for Plaintiff.
Thomas S. Hogan, Marc B. Gursky, Christine L. Nickerson, Providence, for Defendant.
OPINION
LEDERBERG, Justice.
This matter came before the Supreme Court on the petition for certiorari of Lime Rock Fire District (fire district or district), seeking review of a decision of the Superior Court that upheld findings of the Rhode Island State Labor Relations Board (SLRB), a respondent, that the fire district had committed unfair labor practices by laying off six full-time unionized fire fighters. The Lime Rock Fire Fighters Union, Local No. 3023 of the International Association of Fire Fighters, AFL-CIO, (union) is an intervenor respondent.
When it assigned this case for full briefing, this Court directed the parties to address "whether, under the provisions of G.L. (1994 Cum.Supp.) § 28-9.1-3 et seq., The Fire Fighters Arbitration Act so called, a financial town meeting has the authority to abolish the positions of all employees in a particular class after having bargained collectively with them in the past and with whom negotiations for a new contract have commenced." For the reasons stated below, we grant the petition and quash the decisions of the SLRB and of the Superior Court.
Facts and Procedural History
In 1948, the fire district, a public subdivision of the town of Lincoln, Rhode Island, was incorporated and organized pursuant to an act of the General Assembly (enabling act), the district's bylaws, and the Lincoln Town Charter. Under these authorizations, the voters of the fire district elect a Board of Fire Wardens that manages the district. Fire fighting personnel, under the supervision of a fire chief, carry out fire fighting operations. The budget of the fire district is established by a vote of "all qualified electors residing within said district" at an annual financial meeting, in accordance with the provisions of G.L.1956 (1991 Reenactment) § 45-18-1, entitled "Payments to Fire Companies, Appropriations authorized." The district's enabling act requires that the annual financial meeting of the district be held on the first Monday in April.
*52 The union has been certified as the sole representative for the purpose of collective bargaining on behalf of "Fire Fighting and Rescue Service, excluding Fire Chief and the Secretary to the Fire District, employed by the Lime Rock Fire Department." The district's six full-time fire fighters are represented by the union. The fire district also employs a number of "call" fire fighters who are called for employment on an as-needed basis rather than retained on a full-time basis. The part-time, call fire fighters are not organized for purposes of collective bargaining although the union is authorized by statute to represent all permanent fire fighters. G.L.1956 (1995 Reenactment) §§ 28-9.1-3(2) and 28-9.1-4. In addition, following a longstanding tradition, a number of unpaid volunteers supplement the efforts of the paid fire fighters.
Prior to the April 1992 financial meeting, the district and the union had been negotiating the terms of a new contract. The previous contract had expired on February 29, 1992, and the parties had held three negotiation sessions. Both sides agreed that the negotiations would be open to the public. Among the members of the public who attended and took notes at the negotiating sessions were Louis Rivet (Rivet) and Charles Sparhawk (Sparhawk). At the third meeting, on April 1, 1992, the parties agreed in writing to extend the deadline for negotiations until May 29, 1992.
The financial meeting of the fire district was held on April 20, 1992. Prior to the meeting, an advertisement in the local newspaper argued against district tax increases and fire fighter salary raises, contending that any such increases would undermine and erode the work of "our volunteer [fire-fighting] service."[1] The union attempted to counter this advertisement by disseminating leaflets. At the meeting, the voters, at Rivet's initiation, voted to reduce the line item for "Employees' Salaries," including the salaries of the six full-time fire fighters' salaries from $220,060.50, as proposed by the fire wardens, to $24,500only enough to pay the full-time fire fighters through the end of the following week. Rivet also proposed an increase in the line item for part-time, call fire fighters from $40,000 to $159,320. Both the fire chief and the chair of the Board of Fire Wardens objected to Rivet's proposal. Nevertheless, the proposal was adopted by a vote of 144 in favor and 27 opposed. The six fulltime fire fighters were laid off when the appropriated funds ran out on April 24, 1992. Since that time, the fire district has increased the number of call fire fighters in its employ.
The negotiating session that had been scheduled for the next day, April 21, 1992, did not take place because the union representatives did not appear. No further negotiations were held, notwithstanding the parties' prior agreement to extend the deadline for negotiations to May 29, 1992. The union did, however, on May 8, 1992, file a charge with the SLRB, stating that the district "violated [§§ ] 28-7-12, and 28-7-13 Sub-Sections 2, 3, 5, 8, 9, and 10 of the State Labor Laws when the * * * district, during Contract Negotiations, used the Union's Contract Proposals at a District Financial Meeting, which the public was invited to, to create an anti-union position and prompted the public in attendance to remove the union employees from the Fire Department" and also violated the labor laws by laying off the full-time fire fighters "without consultation or discussion with the officers" of the union. The charge further alleged that the positions of the laid-off union members were "filled with nonbargaining unit employees."
An informal conference held on May 28, 1992, failed to resolve the charge, and on October 28, 1992, the SLRB issued a formal complaint against the fire district. Hearings were held before the SLRB on March 24, June 22, and June 24, 1993. The union and the fire district presented testimony and filed briefs. On October 12, 1993, the SLRB issued a decision that found that the fire district had committed unfair labor practices in violation of G.L.1956 (1986 Reenactment) § 28-7-13. Specifically, the SLRB found *53 that the district had interfered with the existence of the union, had refused to bargain, and had interfered with the rights of union employees by violating § 28-7-13, subsections (3), (6), and (10), respectively. These findings were predicated on the layoffs of the full-time fire fighters and on the hiring of new call fire fighters "without consultation with the union." The SLRB rejected, however, the union's contention that the district had violated § 28-7-13, subsections (2), (5), (8), and/or (9), that primarily proscribe blacklisting or discrimination in respect to union activities. An order was entered directing the district to reinstate the six full-time fire fighters with full pay and benefits retroactive to the date of the layoffs and without deductions for interim earnings or unemployment benefits.
The district appealed the SLRB decision to the Superior Court pursuant to G.L.1956 (1993 Reenactment) § 42-35-15. The Superior Court upheld the SLRB's findings, but modified the order to require deduction of interim earnings from the award of back pay, while not requiring the deduction of unemployment benefits. This Court granted the district's petition for certiorari on October 14, 1994. On March 31, 1995, after a showcause hearing before this Court, the case was ordered to the regular calendar for full briefing and argument, and the parties were directed to address the question recited ante.
Remedies Under the Fire Fighters Arbitration Act
The public policy underlying the enactment of the Fire Fighters Arbitration Act (FFAA), G.L.1956 (1995 Reenactment) chapter 9.1 of title 28, is "to accord to * * * all employees of any paid fire department in any city or town all the rights of labor other than the right to strike or engage in any work stoppage or slowdown. To provide for the exercise of these rights, a method of arbitration of disputes" has been established. Section 28-9.1-2(b).
Emphasizing the significance of arbitration in the procedural framework of the FFAA, § 28-9.1-12 states that "the firefighters who are subject to [the FFAA's] terms shall have no right to engage in any work stoppage, slowdown, or strike, the consideration for the provision being the right to a resolution of disputed questions " through the "method of arbitration." Section 28-9.1-2(c). (Emphases added.)
The record before this Court is devoid of any evidence that the parties failed to comply with the provisions of § 28-9.1-13[2] and § 28-9.1-17[3] of the FFAA. Because the parties initiated collective bargaining negotiations for purposes of entering into a new agreement, we therefore assume that bargaining was appropriately initiated in compliance with § 28-9.1-13 and that changes to the contract were proposed in accordance to § 28-9.1-17.
Under the specific and unmistakable directive of § 28-9.1-7 of the FFAA:
"In the event that the bargaining agent and the corporate authorities are unable, within thirty (30) days from and including the date of their first meeting, to reach an agreement on a contract, any and all unresolved issues shall be submitted to arbitration." (Emphasis added.)
Thus, the FFAA expressly directs that "unresolved issues shall be submitted to arbitration." *54 (Emphasis added.) Id. Ignoring this mandate, the union sought relief before the SLRB, alleging unfair labor practices. Clearly, the SLRB was without jurisdiction to consider the charge inasmuch as the specific mechanism for resolving disputes under the FFAA is through arbitration.
Nor does the statute leave any doubt as to which issues are subject to arbitration once that process has been invoked. The "unresolved issues" referred to in § 28-9.1-7 are explicitly defined as
"any and all contractual provisions which have not been agreed upon by the bargaining agent and the corporate authorities within the thirty (30) day period referred to in § 28-9.1-7. Any contractual provision not presented by either the bargaining agent or the corporate authority within the thirty (30) day period shall not be submitted to arbitration as an unresolved issue." (Emphasis added.) Section 28-9.1-3(3).
The union and the fire district had held two negotiating sessions prior to the expiration of the contract on February 29, 1992. At the third meeting, on April 1, 1992, the parties agreed to extend the period for negotiations to May 29, 1992. Under § 28-9.1-7, any unresolved issues should have been submitted to arbitration within thirty days of the first negotiating session. Because the parties agreed by mutual consent to extend the period of negotiations to May 29, 1992, we construe the statute to provide that the parties could present unresolved issues to arbitration within thirty days of that date, or until June 29, 1992. Following the annual financial meeting on April 20, 1992, the status of the fire fighters' jobs was clearly an unresolved issue that could have been discussed at the previously scheduled April 21, 1992 negotiating session or brought to arbitration directly. The union, however, did not attend that meeting.[4] Having organized pursuant to the FFAA, the union failed to exhaust its remedy under the FFAA, namely, to seek arbitration for unresolved issues. Moreover, because the union failed to comply with the provisions of § 28-9.1-3(3) and § 28-9.1-7 in respect to submitting unresolved issues to arbitration within the designated period, it has waived its right to pursue that remedy.
In consequence, we grant the petition for certiorari and quash the decisions of the Superior Court and the SLRB. We return the papers in the case to the Superior Court with our decision endorsed thereon.
SHEA, J., not participating.
NOTES
[1] In its decision the SLRB found that Rivet and Sparhawk were the actual authors of the advertisement, which appeared in the Pawtucket Times and was signed "Concerned Citizens of Lime Rock, Louis Charles, President."
[2] General Laws 1956 (1995 Reenactment) § 28-9.1-13 provides:

"Request for collective bargaining.Whenever wages, rates of pay, or any other matter requiring appropriation of money by any city or town are included as matter of collective bargaining conducted under the provisions of this chapter, it is the obligation of the bargaining agent to serve written notice of request for collective bargaining on the corporate authorities at least one hundred twenty (120) days before the last day on which money can be appropriated by the city or town to cover the contract period which is the subject of the collective bargaining procedure."
[3] Section 28-9.1-17 provides:

"Continuance of contractual provisions.All contractual provisions contained in a collective bargaining agreement entered into pursuant to the provisions of this chapter shall continue in the following collective bargaining agreement unless either the bargaining agent or the corporate authority shall, in writing, within the thirty (30) day period referred to in § 28-9.1-7, propose a change in any contractual provision."
[4] The failure to comply with the provisions of chapter 9.1 of title 28 is addressed in § 28-7-13.1 of the Labor Relations Act.