DECISION
This case is before the Court on the City of East Providence's request for declaratory relief. Specifically, the City of East Providence ("the City") asks this Court to declare and adjudge that the City's proposals for a new collective bargaining agreement ("CBA") with the Rhode Island State Association of Firefighters, Local 850 ("the Union") shall not be excluded from consideration at upcoming interest arbitration proceedings under G.L. 1956 § 28-9.1-1 et seq., the Firefighters Arbitration Act ("the FAA.") For the reasons set forth below, the Court denies the City's request for declaratory judgment.
 FACTS AND QUESTIONS PRESENTED
The most recent labor contract between the City and the Union expired on October 31, 2009. (Pl.'s Supp. Mem. 2.) On June 16, 2009, the firefighters wrote to the City asking to negotiate a successor contract. (Stip. Ex. 1.) This letter fulfilled the Union's obligation under the FAA to serve a written request for bargaining "at least . . . (120) days before the last day on which money can be appropriated by the city . . . to cover the contract period which is the subject of the collective bargaining procedure." Section 28-9.1-13. This letter conspicuously cited *Page 2 
G.L. 1956 § 28-9.1-6, the FAA provision that imposes an obligation "to meet and confer in good faith" to negotiate a CBA within ten days of receipt of the demand for bargaining. Section 28-9.1-6. The City received and signed for the June 16 letter on June 18, 2009, but did not contact the Union to arrange to meet and negotiate. (Stip. Facts.)
When a municipality and its firefighters attempt to negotiate a new CBA, each party submits proposals to the other.See Section 28-9.1-3(3). Each party hopes to incorporate its proposals into the new CBA or to use the proposals as a jumping-off point for negotiations or arbitration. See id. The Union submitted its proposals to the City via the letter of July 27, 2009, despite the fact that the parties had still not met to begin bargaining. (Stip. Ex. 2.) The following day, the Union informed the City that it viewed the City's lack of response to its June 16 demand for bargaining as a failure to negotiate and would refer the matter to the American Arbitration Association ("AAA") for interest arbitration. (Stip. Ex. 3.) The City responded on July 30 and August 4, 2009, to express its willingness to meet and negotiate and to dispute the Union's right under the FAA to refer the matter to arbitration before the parties had met and negotiated. (Stip. Ex. 4 6.)
On August 4, 2009, the Union submitted the matter to the AAA for arbitration. (Stip. Ex. 5.) The Union agreed to meet and attempt to negotiate a successor CBA, but only while the arbitration process continued on a separate track. (Stip. Ex. 7.) The City initially refused to bargain while the arbitration process went forward, but eventually submitted its proposals for a new CBA to the Union. (Pl.'s Supp. Mem. 4, Stip. Ex. 10.) The parties met to negotiate on four occasions, beginning on September 8, 2009, but did not reach an agreement. (Pl.'s Supp. Mem. 4.) Interest arbitration is scheduled for early December 2009. (Pl.'s Supp. Mem. 1.) *Page 3 
This case questions which of the proposals submitted by the parties are proper for consideration by the arbitrators. (Pl. Supp. Mem. 1.) Only "unresolved issues" are referable to arbitration. Section 28-9.1-7. Section 28-9.1-3(3) defines "unresolved issues" as "any and all contractual provisions which have not been agreed upon by the [parties] within the thirty (30) day period referred to in § 28-9.1-7. Any contractual provision not presented by either [party] within the thirty (30) day period shall not be submitted to arbitration as an unresolved issue[.]" Each party advocates a different interpretation of when the "thirty (30) day period referred to in § 28-9.1-7" began. The Union asserts that the 30-day period began ten days after the City received and ignored the Union's June 16 demand for bargaining. (Def.'s Mem. 6.) The City asserts that the 30-day period began on September 8, 2009, the date of the parties' first bargaining session. (Pl.'s Supp. Mem. 7.) The City asks the Court to declare and adjudge "that the City is not estopped or precluded . . . from presenting proposals" during the upcoming arbitration. (Pl.'s Supp. Mem. 7.)
 ANALYSIS
Pursuant to G.L. 1956 § 9-30-1, Rhode Island's enactment of the Uniform Declaratory Judgment Act, the Superior Court has the "power to declare rights, status, and other legal relations" upon petition. Section 9-30-1. The Court has considerable discretion as to whether to grant or deny a request for declaratory judgment.Town of Barrington v. Williams, 972 A.2d 603, 608 (R.I. 2009). While the Court has the authority to issue declaratory judgments, it has no duty to do so. Cruz v. Wausau Ins.,866 A.2d 1237, 1240 (R.I. 2005). For the following reasons, the Court declines to issue a declaratory judgment here.
Courts are discouraged from ruling on issues that are arbitrable.See Section 28-9-4 (directing courts to stay proceedings on issues that are "referable to arbitration"); Purvis *Page 4 Systems, Inc. v. American Sys. Corp.,788 A.2d 1112, 1114 (R.I. 2002) (recognizing "that the role of the judiciary in the arbitration process is extremely limited") (internal quotations omitted); Sch. Comm. v. Pawtucket TeachersAlliance, 120 R.I. 810, 815; 390 A.2d 386, 389 (R.I. 1978) (explaining the "Steelworkers' Trilogy," which held that all doubts about whether an issue is arbitrable "should be resolved in favor of arbitration"). Under the terms of the FAA, the parties are required to go to interest arbitration to craft a new CBA in these circumstances; therefore, this Court will not unnecessarily involve itself by issuing a declaratory judgment. Sections 28-9.1-2(b),-4,-6,-7,-13. The question of whether the City may introduce its CBA proposals at arbitration is arbitrable and best left to the arbitrators, who have the authority to adjudicate such procedural questions. Burns v. Segerson,122 R.I. 123, 130; 404 A.2d 500, 503 (R.I. 1979) (internal quotations omitted).
I. The FAA Dictates that the Parties Should Go to InterestArbitration
The purpose of the FAA is to allow firefighters "the right to bargain collectively" and "all of the rights of labor other than the right to strike or engage in any work stoppage or slowdown." Section 28-9.1-2(b), 4. To ensure that firefighters can exercise the rights of labor without the powerful tool of the strike, "a method of arbitration of disputes is established." Section 28-9.1-2(b). The statute establishes a mandatory time frame for negotiating and arbitrating CBAs.See Sections 28-9.1-6,7,13. Section 28-9.1-13 dictates that the collective bargaining agent must make a written demand for bargaining on the municipality "at least . . . (120) days before the last day on which money can be appropriate by the city . . . to cover the contract period which is the subject of the collective bargaining procedure."
Then, "[i]t shall be the obligation of the city or town . . . to meet and confer in good faith with the . . . bargaining agent within ten (10) days after receipt of written notice from the *Page 5 
bargaining agent of the request for a meeting for collective bargaining purposes." Section 28-9.1-6. In the event that the parties cannot agree upon a contract "within thirty (30) days from and including the date of their first meeting, . . . any and all unresolved issues shall be submitted to arbitration." Section 28-9.1-7.
The City urges the Court to read Section 7 of the FAA to mean that the Union's demand for arbitration on August 4, 2009 was premature. (Pl.'s Supp. Mem. 7.) The language of Section 7 states that the unresolved issues "shall be submitted to arbitration" within 30 days "from and including the date of their first meeting"; therefore, the City asserts, demanding arbitration prior to October 8, 2009 was premature. Section 28-9.1-7. However, such a reading of the statute ignores and contravenes the clear purpose of the statute — to "provide for the exercise" of "all rights of labor" including "the right to bargain collectively" despite the fact that the statute deprives the firefighters of the ability to fortify their bargaining position with the threat of a strike. Section 28-9.1-2(b),-4. Allowing the City to ignore the Union's demand for bargaining would create a disincentive and an end-run to the statutorily mandated bargaining. It defiles the stated directive of § 28-9.1-6: "[i]t shall be theobligation of the city or town . . . to meet and confer in good faith . . ." Section 28-9.1-6 (emphasis added).[1]
In light of the clear intent of the FAA, the Court cannot accede to the City's interpretation of section 7. The Union was not premature in submitting the case to interest arbitration. For this reason, the matter clearly is arbitrable and falls within the rubric of cases with which the courts *Page 6 
are discouraged to interfere. See Section 28-9-4;Pawtucket Teachers Alliance,120 R.I. at 815, 390 A.2d at 389.[2]
II. The Arbitrators Have the Authority To Adjudicate the IssueCurrently Before the Court
The fact that the arbitrators have the authority to determine whether or not the City's proposals are suitable for consideration at arbitration also militates against the issuance of a declaratory judgment on the issue. While questions of substantive arbitrability — whether a party must submit to arbitration at all and what issues it must arbitrate — are in the courts' jurisdiction, disputes over procedural matters should be left to the arbitrators.Pawtucket Teachers Alliance,120 R.I. at 815-17, 390 A.2d at 389-90 (citing JohnWiley Sons v. Livingston, 376 U.S. 543 (1964)). InPawtucket Teachers Alliance, our state Supreme Court held that questions such as whether a party had followed the proper procedures for requesting arbitration were procedural questions that must be left to the discretion of the arbitrators.Id. at 811, 817; 390 A.2d at 387, 390; see also Burns,122 R.I. at 130, 404 A.2d at 503-04 (characterizing the question of whether a party may skip a tier of a grievance procedure as a procedural issue for the arbitrators to decide). The question of whether the City may introduce its contract proposals at arbitration is a procedural one because it does not concern the substantive arbitrability issues of whether the parties must submit to arbitration (they must) and which issues they must arbitrate (the crafting of a new CBA.)See Sections 28-9.1-3(3),-6,-7,-13. *Page 7 
 CONCLUSION
For the foregoing reasons, the Court declines to issue a declaratory judgment in this case. The Plaintiff's request is denied. Whether the City of East Providence may introduce its contract proposals at interest arbitration with the Rhode Island State Association of Firefighters, Local 850 is a matter for the arbitrators to determine.
[1] In addition to violating the mandate of § 28-9.1-6, the City's failure to respond to the Union's notice, which made a clear demand for bargaining and even cited the statute to remind the City of its obligation to respond, was discourteous. This litigation might have been avoided entirely if the City properly responded to a reasonable, statutory request.
[2] The firefighters reference Limerock Fire District v. R.I.State Labor Relations Board, 673 A.2d 51 R.I. 1996 for the proposition that arbitration is their only remedy, given the high court's limitations on pursing an unfair labor practice. The factual predicate of Limerock (a financial meeting of a fire district in the midst of public negotiations for a new contract) was quite unique. Limerock can be read consistently with the plan language of § 28-9.1-6 establishing an unfair labor practice. Regardless, the statutory framework in the case at bar clearly compels arbitration.