**Supreme Court**

No. 2013-44-Appeal.

No. 2013-66-Appeal.

No. 2013-96-Appeal.

WC 12-542

Town of North Kingstown                    :

v.                                         :

International Association of Firefighters,  :
Local 1651 AFL-CIO, et al.                  :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Town of North Kingstown          :

v.                               :

International Association of Firefighters,          :
Local 1651 AFL-CIO, et al.          :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  These consolidated appeals arise out of a decision of the Superior Court issuing various declaratory and injunctive relief in a highly contested labor dispute between the Town of North Kingstown (town) and the North Kingstown Firefighters, Local 1651, International Association of Firefighters, AFL-CIO (union).  For the reasons set forth in this opinion, we affirm in part and reverse in part the decision of the Superior Court.

**I**

**Facts and Travel**

**A**

**The 2010 Expired Collective Bargaining Agreement**

On June 30, 2010, a labor contract that had been in effect between the town and the union since July 1, 2007, expired.  Prior to the expiration of that agreement, the parties had attempted to negotiate a successor contract, but to no avail.  Subsequently, an interest arbitration panel was convened to set forth the terms of a collective bargaining agreement (CBA) between the parties.  After thirteen days of hearings and after sifting through 172 exhibits and 357 pages of post-

- 1 -

hearing briefs, the panel issued an award on August 9, 2011. The panel's award was retroactive, covering the period from July 1, 2010 to June 30, 2011.[1]

One of the more critical and contentious issues that arose during this interest arbitration was the town's proposal to reorganize from a four-platoon structure to a three-platoon structure.[2] The town made clear at the arbitration that, if allowed to effectuate this reorganization, it would not press other of its proposals that would have made structural changes to the operation of the fire department. However, the town's proposal on this issue was rejected by the panel, and the award provided for the same work schedule as the prior CBA.

**B**

**Implementation of the Three-Platoon Structure and <u>North Kingstown I</u>**

On February 23, 2011, the union wrote to the North Kingstown town manager requesting that collective bargaining negotiations commence for a new CBA year 2011-2012 in accordance with G.L. 1956 § 28-9.1-6. The parties exchanged a series of communications and eventually on October 28, 2011, met to bargain for a successor agreement. Five additional negotiating sessions were conducted, but the parties were unable to reach an agreement. Throughout the negotiations, the key issue of contention between the parties was the implementation of the three-platoon structure and the accompanying twenty-four hours on, forty-eight hours off work schedule. At the end of the sessions, no agreement was reached, and no issues were submitted to interest arbitration.

On December 19, 2011, the town wrote to the union indicating that it intended to introduce an ordinance to reorganize the fire department. Two subsequent negotiating sessions

---

[1] The Firefighters Arbitration Act (FFAA or the Act) restricts a panel award to one year. <u>See</u> G.L. 1956 § 28-9.1-12.

[2] To carry out this reorganization, the town set forth a proposal to increase the average workweek from forty-two hours to fifty-six hours and to change the schedule to include a twenty-four hour on-shift followed by a forty-eight hour off-shift.

were conducted. However, no agreement was reached. Then, on January 30, 2012, the town council enacted, in amended form, an ordinance that authorized the town's desired implementation of the department reorganization. Another negotiating session was held after that, but no agreement was reached.

On February 28, 2012, the union filed suit in the Washington County Superior Court seeking: (1) a declaratory judgment that the ordinance was invalid because it was passed in violation of the town charter; (2) a declaratory judgment that the town violated the Firefighters Arbitration Act (FFAA or the Act) and the State Labor Relations Act (SLRA); and (3) injunctive relief. Prior to issuing a decision on the merits, the Superior Court ordered the parties to engage in mediation, which failed to resolve the matter. On March 11, 2012, the town began implementing the ordinance, including the three-platoon structure and accompanying schedule.

On May 23, 2012, the Superior Court issued a written decision declaring that, because it was passed in violation of the town charter, the ordinance was invalid. See International Association of Firefighters, Local 1651, AFL-CIO v. Town of North Kingstown, WC 2012-127, 2012 WL 1948338 (R.I. Super. Ct. May 23, 2012) (North Kingstown I). Additionally, the Superior Court found that, even if that ordinance had been properly passed, it was still "invalid because it conflicts with the FFAA by imposing changes to wages, hours, and terms and conditions of employment without first bargaining to agreement or following the FFAA's statutory arbitration procedures." However, the Superior Court explicitly recognized that:

> "[T]he platoon structure of the Fire Department is a management right that may be properly asserted at the expiration of the CBA [and that] [g]oing forward the parties may agree to a new CBA that addresses the effects of this management change on mandatory bargaining subjects or proceed to interest arbitration, solely to determine the effects on mandatory bargaining subjects and not the management decision itself."

- 3 -

Nevertheless, the court found that "unilateral implementation of changes to wages, hours and terms and conditions of employment" was improper.

## C

## North Kingstown II

Prior to the Superior Court's decision in North Kingstown I, on February 23, 2012, the union wrote to the town manager requesting bargaining for the contract year July 1, 2012 through June 30, 2013. Additionally, on March 14, 2012, the union filed a demand for interest arbitration for the July 1, 2011 through June 30, 2012 contract period and an arbitration panel was named (AAA Case 11 390 00469 12) (2011-2012 Arbitration Panel). Also, the union later filed a demand for interest arbitration for the July 1, 2012 through June 30, 2013 contract period and another arbitration panel was named (AAA Case 11 390 01035 12) (2012-2013 Arbitration Panel). On June 14, 2012, the union filed an unfair labor practice (ULP) charge with the State Labor Relations Board (SLRB) (ULP-6088). On July 9, 2012, the town filed a demand for interest arbitration over the effects of the three-platoon structure reorganization and a third arbitration panel was named (AAA Case 11 390 01169 12) (Effects Arbitration Panel).[3] On August 2, 2012, the SLRB issued a complaint against the town, alleging that the manner in which the town implemented the three-platoon structure violated state law.

On September 5, 2012, the town filed a verified complaint in the Superior Court seeking declarations that:

(1) the SLRB was without jurisdiction to enforce ULP-6088;

(2) the town's actions in implementing the three-platoon structure were lawful;

(3) jurisdiction to determine the effects of the town's decision to implement the three-platoon structure rests exclusively with the Effects Arbitration Panel;

---

[3] The town later, on November 5, 2012, withdrew this demand for arbitration.

- 4 -

(4) the union waived its right to submit to interest arbitration the unresolved issues arising out of the parties' negotiations for a CBA for the July 1, 2011 through June 30, 2012 period; and

(5) the 2011-2012 Arbitration Panel was without jurisdiction to decide any unresolved issues between the parties for the July 1, 2011 through June 30, 2012 period.

The town also sought to stay the 2011-2012 Arbitration Panel and a declaration that the SLRB was without jurisdiction to enforce ULP-6088. On September 24, 2012, the town filed an amended complaint and petition to stay arbitrations and sought additional declarations, including that:

(1) the union failed to comply with its obligation under § 28-9.1-13, therefore forfeiting its right to collectively bargain as to firefighters' wages, rates of pay, or any other matter requiring appropriation of money by the town for the July 1, 2011 through June 30, 2012 period;

(2) the union failed to comply with its obligation under § 28-9.1-13, therefore forfeiting its right to collectively bargain as to firefighters' wages, rates of pay, or any other matter requiring appropriation of money by the town for the July 1, 2012 through June 30, 2013 period;

(3) the union waived its right to submit to interest arbitration the unresolved issues arising out of the parties' negotiations for a CBA for the July 1, 2012 through June 30, 2013 period; and

(4) the 2012-2013 Arbitration Panel was without jurisdiction to decide any unresolved issues between the parties for the July 1, 2012 through June 30, 2013 period.

The town also sought to stay the 2012-2013 Arbitration Panel.

At the time these actions were filed, the town was continuing to operate under the three-platoon structure. The town's position before the Superior Court was that it had the inherent right to reorganize into the three-platoon structure, especially in light of the fact that the CBA had expired and the union had failed to request interest arbitration of unresolved issues within the time frame delineated by the FFAA as set forth in § 28-9.1-7. Additionally, the town

contended that the union had forfeited its right to collectively bargain altogether due to the union's failure to comply with the notice provision of § 28-9.1-13.

Both parties filed memoranda addressing the issues pending before the Superior Court. In order to simplify and clarify the issues that needed to be addressed, the Superior Court held a conference in accordance with Rule 16 of the Superior Court Rules of Civil Procedure. The parties were instructed to agree to the most significant issues that needed to be addressed. Pursuant to this instruction, the parties submitted a statement to the Superior Court indicating that "the parties agree[d] that the following issues [were] before the Court for decision." The issues presented were:

> (1) Decide the town's petition/motion to stay the 2011-2012 Arbitration Panel;
>
> (2) Decide the town's petition/motion to stay the arbitration of Certain Firefighter Grievances;
>
> (3) Decide the town's request for a stay of ULP-6088;
>
> (4) Decide the town's petition/motion to stay the 2012-2013 Arbitration Panel;
>
> (5) Decide the town's request for a declaration that the town's implementation of the three-platoon structure was lawful;
>
> (6) Decide whether the town bargained with the union to impasse over the effects of the three-platoon structure before unilaterally changing the work schedules and shifts; and
>
> (7) If not, decide whether the town has the right to implement a three-platoon structure without first bargaining with the union to impasse over the effects of the change.

On December 14, 2012, the Superior Court issued a written decision that addressed some, but not all, of the matters presented in the parties' list of issues. See Town of North Kingstown v. International Association of Firefighters, Local 1651, AFL-CIO, WC 2012-542, 2012 WL 6638703 (R.I. Super. Ct. Dec. 14, 2012) (North Kingstown II).

By its own terms, the <u>North Kingstown II</u> decision was stayed for thirty days from the date of its issuance to afford the parties "the opportunity to either consent to an Order implementing [the] Decision or request a stay, or other appropriate relief as may be appropriate from the Rhode Island Supreme Court." No such consent order was presented to the court. On February 4, 2013,[4] the Superior Court entered an order setting forth the following five declarations issued in the decision:

> "(1) The Town's actions in implementing unilateral changes to the wages, hours, and terms and conditions of employment, were unlawful, in violation of the doctrine of election of remedies and the terms of the FFAA.
>
> (2) The SLRB, and not [the Superior Court], has jurisdiction over the subject matter of the Complaint in ULP-6088 insofar as it is necessary to determine which terms and conditions have existed between the parties since the expiration of the previous CBA.
>
> (3) The arbitration panel does not have jurisdiction to determine the effects of said unilateral changes, as those changes are invalid and must be undone.
>
> (4) Both the Union and the Town waived their rights to submit unresolved issues to interest arbitration under the FFAA, pursuant to R.I. Gen. Laws § 28-9.1-7.
>
> (5) The interest arbitration panel has no jurisdiction to decide any unresolved issues existing between the Town and the Union because interest arbitration— pursuant to the terms of the FFAA—was waived by the parties for the fiscal year 2011-2012."

Additionally, the Superior Court ordered the town to reinstate the wages, hours, and other terms and conditions of employment that existed prior to the implementation of the three-platoon structure, i.e. prior to March 11, 2012. The town timely appealed the issuance of the injunctive relief.

On February 5, 2013, the town moved for a final judgment on paragraphs 1 through 5 of the order pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The Superior

---

[4] Initially, the order was issued with an incorrect caption. The following day, on February 5, 2013, the order was reissued with the correct caption.

Court granted the motion at a hearing the following day, and the town timely appealed to this Court, and the union filed a cross-appeal challenging the declaration that the union waived its right to interest arbitration. At that same hearing, the hearing justice denied the town's motion to stay the order pending appeal.

In accordance with Article I, Rule 8 of the Supreme Court Rules of Appellate Procedure, the town moved in this Court for a stay of the order pending appeal. We temporarily stayed the order. In the interim, the parties entered into appellate mediation, which ultimately proved unsuccessful. After oral argument, we granted the town's motion for a stay. See Town of North Kingstown v. International Association of Firefighters, Local 1651, AFL-CIO, 65 A.3d 480, 483 (R.I. 2013) (mem.) (North Kingstown II Supreme Court Stay). Additionally, we granted the parties' joint motion to remand count 5 of the town's amended complaint seeking a stay of the 2012-2013 Arbitration Panel because final judgment had not entered on the count. See id. On October 17, 2013, we consolidated the three appeals for review.

**D**

**Other Matters Pending**

Prior to argument before this Court, other matters remained pending elsewhere between these parties. In particular, on September 27, 2013, the SLRB issued a decision and order in ULP-6088 concluding that the town had committed unfair labor practices by failing to bargain in good faith and unilaterally implementing its reorganization in violation of the FFAA. See In re Rhode Island State Labor Relations Board and the Town of North Kingstown, ULP-6088, 2013 WL 5755149 (R.I. Lab. Rel. Bd. Sept. 27, 2013). The SLRB ordered the town to, inter alia:

> (1) Immediately restore the firefighters' schedule, hours of work, and hourly rate of pay to that which existed upon the expiration of the 2010-2011 contract year;

> (2) Issue back pay to affected firefighters;

- 8 -

(3) Pay interest on the back pay;

(4) Restore all contractually bargained-for benefits to the union that the town had unilaterally terminated;

(5) Participate in interest arbitration for the 2011-2012 fiscal year;

(6) "[R]estore and then maintain the status quo on all terms and conditions of employment that existed in the 2010-2011 collective bargaining agreement;" and

(7) "[C]ease and desist from unilaterally implementing, at any time henceforth, any changes to the wages, rates of pay, hours, working conditions, or other terms and conditions of employment of the employees represented by the Union."

On September 30, 2013, the SLRB filed a petition to enforce its decision and order in the Superior Court.

The town appealed the SLRB decision and order to the Superior Court. Additionally, the town sought to stay the SLRB decision pending that appeal, which was granted by the Superior Court.[5] On January 6, 2014, the Superior Court issued a written decision on the town's administrative appeal and the SLRB's petition to enforce. See Town of North Kingstown v. Rhode Island State Labor Relations Board, PC 13-4261, WM 13-0516, 2014 WL 185327 (R.I. Super. Ct. Jan. 6, 2014) (North Kingstown III). The Superior Court affirmed the SLRB's decision and order and granted the petition to enforce with the exception of the requirement that the town participate in interest arbitration for the 2011-2012 fiscal year (paragraph 5) and the order that the town "cease and desist from unilaterally implementing, at any time henceforth, any changes to the wages, rates of pay, hours, working conditions, or other terms and conditions of employment of the employees represented by the Union" (paragraph 7). To avoid potential conflict between this Court's previous stay in North Kingstown II Supreme Court Stay and the Superior Court's decision in North Kingstown III, the Superior Court stayed its own decision

---

[5] On October 1, 2013, the Presiding Justice of the Superior Court issued an administrative order consolidating the matters pending between the parties in the Superior Court.

until appropriate resolution from this Court. The town subsequently appealed the decision to this Court; however, the matter is not currently before us on this appeal.

## II

## Standard of Review

"A decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law." Hagenberg v. Avedisian, 879 A.2d 436, 441 (R.I. 2005). Additionally, we "afford deference to a trial justice's 'resolution of mixed questions of law and fact.'" Carrozza v. Voccola, 90 A.3d 142, 151 (R.I. 2014) (quoting Nye v. Brousseau, 992 A.2d 1002, 1008 (R.I. 2010)). However, "[t]his Court reviews questions of law and statutory interpretation de novo * * * [and] is 'free to affirm on grounds other than those relied on by the trial justice.'" Progressive Northern Insurance Co. v. Lyden, 986 A.2d 231, 233 (R.I. 2010) (quoting Shepard v. Harleysville Worcester Insurance Co., 944 A.2d 167, 170 (R.I. 2008)).

## III

## Discussion

## A

## The Declarations

1. The Town's Actions in Implementing Unilateral Changes

At the heart of this litigation is the town's unilateral implementation of a three-platoon structure and the effects of that reorganization, including the change to a twenty-four hours on, forty-eight hours off schedule. The town has expressed some understandable frustrations over the course of these proceedings in its pursuit to cement the implementation of this structure. The

- 10 -

town had vigorously asserted its desire to implement this structure to the arbitration panel that issued the 2010-2011 award. Despite the town's offering to forgo other proposals if it were allowed to implement the three-platoon structure, the arbitration panel rejected the proposal. Additionally, the Superior Court has suggested that "the platoon structure of the Fire Department is a management right." Yet, the Superior Court found that the town's implementation of that structure was improper.

As a backdrop to the matter before us, we note that "[w]ith respect to labor law issues, this Court has frequently looked to the voluminous body of federal case law for guidance." Town of Burrillville v. Rhode Island State Labor Relations Board, 921 A.2d 113, 120 (R.I. 2007). In particular, "we have recognized the persuasive force of federal cases which have construed the phrase 'terms and conditions of employment.'" Barrington School Committee v. Rhode Island State Labor Relations Board, 120 R.I. 470, 479, 388 A.2d 1369, 1374 (1978).

The FFAA recognizes firefighters' "right to bargain collectively * * * as to wages, rates of pay, hours, working conditions, and all other terms and conditions of employment." Section 28-9.1-4. Additionally, as long as a union complies with applicable notice provisions, the FFAA establishes an obligation on a city or town to meet and confer in good faith with the union for collective bargaining purposes. See §§ 28-9.1-6; 28-9.1-13. "Read together, these provisions establish the obligation of the [city or town] and the [union] * * * to bargain with each other in good faith with respect to [wages, rates of pay, hours, working conditions, and all other terms and conditions of employment]." Fibreboard Paper Products Corp. v. National Labor Relations Board, 379 U.S. 203, 210 (1964) (quoting National Labor Relations Board v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 349 (1958)). However, "[t]he duty is limited to those

subjects," which, thus, constitute mandatory subjects of collective bargaining. Id. (quoting Wooster Division of Borg-Warner Corp., 356 U.S. at 349).

In contrast, there are certain matters that may not be bargained away by a public employer. See Vose v. Rhode Island Brotherhood of Correctional Officers, 587 A.2d 913, 915 (R.I. 1991). A public employer may not bargain away its statutory duties. See id. Likewise, it is "a basic rule of law that [public employers] are not at liberty to bargain away their powers and responsibilities with respect to the essence of the[ir] * * * mission." North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers, 945 A.2d 339, 347 (R.I. 2008). Additionally, a public employer is not "empowered to delegate to arbitrators * * * [its] statutory obligation[s];" State, Department of Mental Health, Retardation, and Hospitals v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, 692 A.2d 318, 324 (R.I. 1997), or "decision[s] * * * directly related to the essence of [its] * * * mission." North Providence School Committee, 945 A.2d at 347. This prohibition can even hold true notwithstanding the fact that action taken related to the employer's mission or pursuant to a statutory obligation may impact something that is otherwise a mandatory subject of collective bargaining. Cf. State, Department of Mental Health, Retardation, and Hospitals, 692 A.2d at 324 (stating that in light of particular statutory duties "the extent to which the [public employer] is obligated to arbitrate regarding its * * * employees' hours of work is not boundless"); Vose, 587 A.2d at 916 (holding that CBA "shall not be interpreted as restricting the [public employer's] statutory power to order mandatory involuntary overtime").

In a related vein, it is well-established that there are certain "managerial decisions, which lie at the core of entrepreneurial control" over an organization. Ford Motor Co. v. National Labor Relations Board, 441 U.S. 488, 498 (1979) (quoting Fibreboard Paper Products Corp., 379

U.S. at 223 (Stewart, J., concurring)).[6] With respect to these decisions, a "union should [not] be able to dictate to the [employer]" because such "matters [are] strictly within the province of management." Barrington School Committee, 120 R.I. at 479, 388 A.2d at 1375. Accordingly, the choice itself of whether or not to implement a particular management decision is not subject to mandatory bargaining and need not be submitted to arbitration. See Providence Hospital v. National Labor Relations Board, 93 F.3d 1012, 1018 (1st Cir. 1996). This holds true notwithstanding the fact that such a decision "may have effects—sometimes profound effects— upon th[e] [terms and] conditions" of employment. Id.

Nevertheless, we reiterate "that when, as here, the problem involved concerns both a question of management and a term or condition of employment, it is the duty of the [employer] to negotiate with the [individuals] involved." Barrington School Committee, 120 R.I. at 479-80, 388 A.2d at 1375. That duty, however, is limited to the obligation to negotiate over the effects of the decision that is within the prerogative of management. As explained by the First Circuit:

> "[T]here is an important distinction between the right to bargain about a core entrepreneurial business decision (a right which a union does not possess) and the right to bargain about the effects of that decision on employees within a bargaining unit (a right which, depending upon the overall circumstances, a union may possess). * * * [Put another way], even when a particular managerial decision is not itself a mandatory subject of bargaining, the decision's forecasted

---

[6] We are cognizant that much of the federal precedent deals with private-sector cases. However, as we have said in the past, "[w]ith respect to labor law issues, this Court has frequently looked to the voluminous body of federal case law for guidance." Town of Burrillville v. Rhode Island State Labor Relations Board, 921 A.2d 113, 120 (R.I. 2007). Further, we note that, in recognizing the existence of certain decisions as being within the managerial prerogative of a public employer, we do not break new ground. See Barrington School Committee v. Rhode Island State Labor Relations Board, 120 R.I. 470, 479, 388 A.2d 1369, 1375 (1978) (recognizing that there are certain "matters [that are] strictly within the province of management"); see also Bargainable or Negotiable Issues in State Public Employment Labor Relations, 84 A.L.R.3d 242, 255-56 (1978) ("Perhaps the single greatest, and almost universally recognized, limitation on the scope of bargaining or negotiation by state public employees is the concept of managerial prerogative as it has developed in the public sector.").

impact on * * * terms and conditions of employment may constitute a mandatory subject of collective bargaining." Providence Hospital, 93 F.3d at 1018.

It is within this framework that we analyze the propriety of the town's actions in implementing the three-platoon structure.

At the outset, we acknowledge that what constitutes a management decision "eludes a precise description." Providence Hospital, 93 F.3d at 1018. Rather than setting forth sweeping generalizations in this complex area, we believe that making the determination of what constitutes a management decision is a "chore [that] is best executed on a case-by-case basis in view of the dearth of available guidelines for decision." Belanger v. Matteson, 115 R.I. 332, 362, 346 A.2d 124, 141 (1975) (Paolino, J., concurring in part and dissenting in part).

After review of the record and in light of our consideration of the particular circumstances that have given rise to the long and bitter conflict between these parties, we hold that the decision to implement the three-platoon structure is a management right of the town. This determination finds support among certain decisions from other jurisdictions.[7] See, e.g., State ex rel. Quiring v. Board of Education of Independent School District No. 173, Mountain Lake, Minnesota, 623 N.W.2d 634, 640 (Minn. Ct. App. 2001) (holding that reorganization of organizational structure is a matter of inherent managerial policy that does not require negotiations with bargaining units); Appeal of International Association of Firefighters, AFL-CIO Local 1088, 462 A.2d 98, 100 (N.H. 1983) (upholding determination that alteration of fire department's "platoon size was a subject falling solely within management discretion"); Borough of Atlantic Highlands v. Atlantic Highlands PBA Local 242, 469 A.2d 80, 85 (N.J. Super. Ct.

---

[7] Although the terms of the 2007-2010 CBA had expired and its terms do not "fill a gap between CBAs," Arena v. City of Providence, 919 A.2d 379, 392 (R.I. 2007), we nonetheless find support for our determination in the fact that the 2007-2010 CBA contained a management rights clause in which the town "retain[ed] all other rights and responsibilities inherent in the Town Council, Town Manager, Director of Public Safety and the Fire Chief." This provision went unchanged in the 2010-2011 arbitration award.

App. Div. 1983), certif. den., 475 A.2d 588 (N.J. 1984) (holding that, based on particular facts, "issue of shift changes is nonnegotiable"). Nonetheless, while the decision to implement the three-platoon structure is a management right, it remains that the effects of that decision are subject to the FFAA's bargaining requirements. See Providence Hospital, 93 F.3d at 1018.

Still, it is also true that a city or town's obligation to bargain is predicated on a union's compliance with certain prerequisites. In Town of Tiverton v. Fraternal Order of Police, Lodge # 23, 118 R.I. 160, 163, 372 A.2d 1273, 1275 (1977), this Court analyzed a provision under the Municipal Police Arbitration Act (MPAA)[8] that is identical to a provision in the FFAA. The statutes provide that:

> "Whenever wages, rates of pay, or any other matter requiring appropriation of money by any city or town are included as a matter of collective bargaining conducted under the provisions of this chapter, it is the obligation of the bargaining agent to serve written notice of request for collective bargaining on the corporate authorities at least one hundred twenty (120) days before the last day on which money can be appropriated by the city or town to cover the contract period which is the subject of the collective bargaining procedure." Section 28-9.1-13; G.L. 1956 § 28-9.2-13.

We construed the words "last day on which money can be appropriated," § 28-9.2-13, to be the "day on which the financial town meeting is ordinarily held." Town of Tiverton, 118 R.I. at 166, 372 A.2d at 1276. We found unavailing the union's argument that there were other ad-hoc ways in which the town could appropriate money that were separate from the date of the financial town meeting, noting that the "statute is clearly designed for the ordinary course of events." Id.

Further, we stated that the statute in question operated "like an appeals statute, condition[ing] rights thereunder on full compliance with the stated requirements." Town of Tiverton, 118 R.I. at 165, 372 A.2d at 1276. Additionally, we "construe[d] the statute to be

---

[8] We have construed similar provisions in both acts under the same legal analysis. See City of East Providence v. Local 850, International Association of Firefighters, AFL-CIO, 117 R.I. 329, 331, 366 A.2d 1151, 1152 (1976).

mandatory," rather than merely directory. Id. As such, we held that because the union's notice was not timely, "the town was not obliged to negotiate with the [union] on any issues falling within the purview of § 28-9.2-13." Town of Tiverton, 118 R.I. at 166-67, 372 A.2d at 1276.

Here, the Superior Court justice correctly recognized that it was "clear that the Union did not give the required notice prior to the 120-day time frame."[9] Notwithstanding, he declined to find that the union had forfeited its right to bargain over matters requiring the appropriation of money. He put particular significance on the fact that the parties actually negotiated after receipt of the defective notice. This emphasis was misplaced. In Town of Tiverton, 118 R.I. at 163, 372 A.2d at 1275, the parties also entered into negotiations after receipt of the union's defective notice. Notwithstanding that fact, we held that the union's failure to comply with the statutory directives was fatal, and that the town could not be compelled to negotiate with the union regarding any matter requiring the appropriation of money. Id. at 166-67, 372 A.2d at 1276. We discern no legally distinguishable difference from what occurred here.[10] Accordingly, we hold that the union's failure to comply with § 28-9.1-13 vitiated any obligation of the town to bargain regarding any matter requiring the appropriation of money.

---

[9] The union argues that under the town's charter it is possible to appropriate money in ways other than through the approval of the town's final budget. We rejected this type of argument in Town of Tiverton v. Fraternal Order of Police, Lodge # 23, 118 R.I. 160, 166, 372 A.2d 1273, 1276 (1977). We reject the same here as well. Section 1008 of the town's ordinances provides that the ordinary date for final approval of the town's budget is the "first Wednesday in May." In 2011, the date that was 120 days in advance of the first Wednesday in May was January 4, 2011. However, the union did not request bargaining until February 23, 2011, which was over a month after the 120-day deadline. Therefore, the union's request was not timely.

[10] The union attaches significant weight to our recognition in Town of Tiverton, 118 R.I. at 163, 372 A.2d at 1275, that the town entered negotiations "[u]nder protest." In that case, the town had already been ordered by the Superior Court to enter into negotiations. Id. Thus, the town's protest in that case should simply be read as acknowledging that the town complied with the Superior Court's order pending appeal to this Court. See id. That fact, however, does not alter our analysis and the conclusion that here the town was not obligated to bargain with the union on "any issues falling within the purview of [§ 28-9.1-13]." Town of Tiverton, 118 R.I. at 166-67, 372 A.2d at 1276.

- 16 -

Our analysis does not end here, however. While the union's failure to comply with § 28-9.1-13 removed any obligation the town had to bargain regarding any matter requiring the appropriation of money, it still remained that the town was required, upon proper notice, to bargain regarding other matters. See § 28-9.1-6. Such bargaining did in fact occur. Section 28-9.1-7 provides that:

> "In the event that the bargaining agent and the corporate authorities are unable, within thirty (30) days from and including the date of their first meeting, to reach an agreement on a contract, any and all unresolved issues shall be submitted to arbitration."

Here, the parties' first meeting took place on October 28, 2011; therefore, any unresolved issues must have been submitted to arbitration within thirty days from that date. The union did not demand interest arbitration until March 14, 2012, which was well beyond the thirty-day time frame. Accordingly, the hearing justice correctly found that the union failed to timely submit any unresolved issues pursuant to § 28-9.1-7.

The union argues that the parties mutually agreed to extend the period for negotiations. In Lime Rock Fire District v. Rhode Island State Labor Relations Board, 673 A.2d 51, 52 (R.I. 1996), we acknowledged that the parties had expressly "agreed in writing to extend the deadline for negotiations." (Emphasis added.) Thus, we considered the deadline to be thirty days from the date to which the parties had expressly agreed to extend their negotiations. Id. at 54. In contrast, here the hearing justice found that there was no evidence that the parties expressly agreed to either any particular time frame for negotiations or an extension of such a time frame to a particular point. We find no error in that determination. Cf. Marshall Contractors, Inc. v. Brown University, 692 A.2d 665, 670 (R.I. 1997) (stating that generally "when contract negotiations materialize into a mutual understanding and resulting binding contract is ordinarily a question of fact for the factfinder"). Without an express agreement to extend the deadline, the

hearing justice was correct in determining that the deadline of § 28-9.1-7 could not be extended. See Lime Rock Fire District, 673 A.2d at 54. Therefore, because the union[11] failed to timely "submit[ ] unresolved issues to arbitration within the designated period, it has waived its right to pursue that remedy." Id.

In Lime Rock Fire District, 673 A.2d at 52, the town's fire district laid off an entire class of employees. Without any evidence to the contrary, we assumed that the union complied with § 28-9.1-13 and timely requested bargaining on matters requiring the appropriation of money. Lime Rock Fire District, 673 A.2d at 53. We further assumed that both parties appropriately offered proposed changes in contractual provisions during bargaining. Id.; see § 28-9.1-17. Further, we recognized that "the status of the fire fighters' jobs was clearly an unresolved issue that could have been * * * brought to arbitration * * *." Lime Rock Fire District, 673 A.2d at 54; see § 28-9.1-3(3). However, in light of the union's failure to timely submit any unresolved issues (i.e. provisions regarding "the status of the fire fighters' jobs") to arbitration, we did not find the fire district's unilateral action to be unlawful. Lime Rock Fire District, 673 A.2d at 54.

Additionally, in Lime Rock Fire District, 673 A.2d at 53, we recognized "the significance of arbitration in the procedural framework of the FFAA." Construing § 28-9.1-2(c) and § 28-9.1-12 together, we noted that "'the firefighters who are subject to [the FFAA's] terms shall have no right to engage in any work stoppage, slowdown, or strike, the consideration for the provision being the right to a resolution of disputed questions' through the 'method of arbitration.'" Lime Rock Fire District, 673 A.2d at 53 (quoting §§ 28-9.1-2(c) and 28-9.1-12). Failure to avail itself of this right exposes a union to potentially drastic outcomes. See id. at 54.

---

[11] The hearing justice also found that the town had waived its purported right to submit unresolved issues to arbitration. We discuss that determination infra.

- 18 -

Here, it is our opinion that the town's actions in implementing its decision to change to a three-platoon structure were lawful under the circumstances before us in this case. We reach this determination based on the union's failure to timely comply with § 28-9.1-13, its failure to timely submit unresolved issues to arbitration pursuant to § 28-9.1-7, and our reliance on both our own precedent and that of other courts. Critical to this holding is that the union had knowledge that the town had proposed to implement the three-platoon structure as early as the negotiations and hearings before the arbitration panel for the July 1, 2010 to June 30, 2011 contract year. Additionally, the union was put on formal notice at least as early as the first negotiation session on October 28, 2011, regarding matters pertaining to the 2011-2012 contract year, of the town's proposal to implement the three-platoon structure.

In Town of Burrillville, 921 A.2d at 116, the town sought to change the procedure for police officers' receipt of injured-on-duty (IOD) benefits. The town and the union discussed the contents of the proposed change. Id. at 120. Despite the fact that only approximately one week had passed between the time the town informed the union of the proposed change and the implementation of the proposed change, we found that the union had "received more than adequate notice about the contents of [the] proposed [change], but it failed to request bargaining after receiving such notice." Id. We held that "a union with sufficient notice of a contemplated change waives its bargaining rights if it fails to request bargaining prior to the implementation of that change." Id. At that point, the SLRB had already opined that the issue, i.e. receipt of IOD benefits, was a "mandatory subject[ ] for bargaining." Id. at 117.[12] Nevertheless, in light of the union's waiver, we held that the town was free to implement the proposed change. Id. at 121.

---

[12] Because of our determination of waiver, we did not address the town's argument that receipt of IOD benefits was not a mandatory subject of collective bargaining. Town of Burrillville, 921 A.2d at 121 n.6.

Here, we note that the union had knowledge of the town's proposal to implement the three-platoon structure during the proceedings leading up to the July 1, 2010 to June 30, 2011 arbitration award and also that the union failed to timely comply with § 28-9.1-13. It is certainly arguable that these facts alone may have justified the town in implementing its decision to reorganize in a three-platoon structure.[13] See Town of Burrillville, 921 A.2d at 120; Town of Tiverton, 118 R.I. at 166-67, 372 A.2d at 1276. Without doubt, however, because: (1) the union had knowledge of the town's desire to implement the three-platoon structure from the previous year's negotiations; (2) the union failed to timely comply with § 28-9.1-13; (3) the town formally proposed the implementation of the three-platoon structure at the October 28, 2011, negotiating session; and (4) the union failed to timely submit unresolved issues to interest arbitration pursuant to § 28-9.1-7, the town's implementation of its decision to reorganize in a three-platoon structure was lawful. See Town of Burrillville, 921 A.2d at 120; Lime Rock Fire District, 673 A.2d at 54.

Moving forward, the town may continue to assert the decision to implement the three-platoon structure as a management right. The town is not required to bargain with the union regarding this decision. See Providence Hospital, 93 F.3d at 1018; see also Fibreboard Paper Products Corp., 379 U.S. at 223 (Stewart, J., concurring) ("Nothing the Court holds today should be understood as imposing a duty to bargain collectively regarding such managerial decisions, which lie at the core of entrepreneurial control."). Additionally, the town may not be compelled

---

[13] Conditions precedent to the availability of the binding arbitration mechanism are (1) the timely request for bargaining and (2) then the presentment of a particular proposed contractual provision during bargaining. See § 28-9.1-3(3) ("Any contractual provision not presented by either the bargaining agent or the corporate authority within the thirty (30) day period shall not be submitted to arbitration as an unresolved issue * * *."). Therefore, failing to timely request bargaining pursuant to § 28-9.1-13 may, by itself, subject a union to the unilateral implementation of matters pertaining to the appropriation of money, including wages, hours, and other terms and conditions of employment. See Lime Rock Fire District v. Rhode Island State Labor Relations Board, 673 A.2d 51, 54 (R.I. 1996).

to submit the decision itself to interest arbitration. Cf. Litton Financial Printing Division, a Division of Litton Business Systems, Inc. v. National Labor Relations Board, 501 U.S. 190, 208-09 (1991) ("Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'" quoting AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 651 (1986)).[14]

Nonetheless, provided that the union complies with the FFAA's requirements and makes timely requests, the town must bargain regarding the effects of its decision to implement the three-platoon structure. See §§ 28-9.1-6; 28-9.1-13; Providence Hospital, 93 F.3d at 1018. Similarly, provided that the union complies with the FFAA's requirements and makes timely requests, the union may submit unresolved issues regarding the effects of the town's decision to interest arbitration. See §§ 28-9.1-3(3); 28-9.1-6; 28-9.1-7; 28-9.1-13; 28-9.1-17.

Our determination that, under the particular circumstances of this case, the town was justified in unilaterally implementing its decision to reorganize into the three-platoon structure renders many of the other issues in this case largely academic. However, for the purpose of clarity, we proceed to tie up any loose ends.

---

[14] One manner by which a determination of a management right may be available to a city or town is through declaratory relief. Alternatively, in the event an arbitration panel rejects a city or town's assertion of a management right, the city or town may subsequently seek our review of the arbitration award by petition for writ of certiorari. See § 28-9.1-15; State, Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 866 A.2d 1241, 1247 (R.I. 2005) (acknowledging that "[t]he issue of whether a dispute is arbitrable is a question of law that this Court reviews de novo"); Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee, 770 A.2d 834, 837 (R.I. 2001) (stating that "like subject matter jurisdiction, the question of arbitrability may be raised by the parties at any time, or by this Court sua sponte").

2. <u>The Right to Submit Unresolved Issues to Interest Arbitration</u>

The hearing justice found that the burden of submitting unresolved issues to interest arbitration falls on both unions and public employers. Accordingly, he found that, because no issues were timely submitted to interest arbitration, both the union and the town had waived such right. The town avers that the right to submit unresolved issues to interest arbitration is a "right of labor" that is afforded to firefighters under the FFAA and is not available to public employers.

We agree with the hearing justice that the union waived its right to submit unresolved issues to interest arbitration. In light of our determination that the town was justified in implementing the three-platoon structure, however, we find that it is unnecessary for us to weigh in on the question of the town's purported waiver. There may indeed be circumstances where a public employer may desire to invoke binding interest arbitration. Whether that is a right that is available to public employers under the FFAA, and whether a public employer could waive such a right, if available, are "issue[s] for another day in another case." <u>Berman v. Sitrin</u>, 101 A.3d 1251, 1269 (R.I. 2014) (quoting <u>Calise v. Curtin</u>, 900 A.2d 1164, 1169 (R.I. 2006)).

3. and 4. <u>The Interest Arbitration Panel Has No Jurisdiction to Decide Any Unresolved Issues between the Parties and Does Not Have Jurisdiction to Determine Effects of Unilateral Changes</u>

The hearing justice found that the 2011-2012 Arbitration Panel did not have jurisdiction to determine or resolve any issues between the parties. The first basis for this finding was predicated on his determination that the town's actions must be undone. The second flowed from his determination that the parties had waived the right to interest arbitration pursuant to our decision in <u>Lime Rock Fire District</u>. We find this second basis dispositive and, therefore, affirm the hearing justice's determination that the 2011-2012 Arbitration Panel does not have any jurisdiction to decide any unresolved issues between the parties because of the union's waiver

- 22 -

pursuant to Lime Rock Fire District. Due to the union's waiver of its right to demand interest arbitration, neither does the 2011-2012 Arbitration Panel have jurisdiction to determine the effects of the town's decision to implement the three-platoon structure.

5. The SLRB has Jurisdiction over ULP-6088 insofar as it is Necessary to Determine Terms and Conditions After Expiration of Previous CBA

The hearing justice, relying on our decision in Warwick School Committee v. Warwick Teachers' Union, Local 915, 613 A.2d 1273 (R.I. 1992), found that the SLRB, and not the Superior Court, had jurisdiction to determine which terms and conditions of employment existed between the parties since the expiration of the 2007-2010 CBA. In the abstract, we do not disagree with the hearing justice's reading of Warwick School Committee;[15] however, based on our application of our other precedent to the facts of this case, there is nothing for the SLRB to determine with respect to the relationship between the parties, at least as far as the July 1, 2011 through June 30, 2012 period. Had the same series and confluence of events[16] not occurred, the town may not have been justified in implementing the three-platoon structure and there may have been something for the SLRB to determine.

---

[15] Indeed, in our order issuing a stay in this case, we quoted Warwick School Committee, stating that "the Superior Court does not have original jurisdiction of the question to determine what, if any, agreement is in force between [management] and [a] union." Town of North Kingstown v. International Association of Firefighters, Local 1651, AFL-CIO, 65 A.3d 480, 482 (R.I. 2013) (mem.) (North Kingstown II Supreme Court Stay) (quoting Warwick School Committee v. Warwick Teachers' Union, Local 915, 613 A.2d 1273, 1276 (R.I. 1992)).

[16] That is: (1) union's knowledge of town's desire to implement three-platoon structure from prior year's arbitration proceedings; (2) union's failure to timely comply with § 28-9.1-13; (3) town's formal proposal of three-platoon structure during bargaining; and (4) union's failure to timely submit unresolved issues to interest arbitration per § 28-9.1-7.

**B**

**The Injunction**

In addition to the five declarations, the Superior Court also ordered the town to reinstate the wages, hours, and other terms and conditions of employment that existed prior to the implementation of the three-platoon structure. Previously, we stayed the injunction pending this appeal. North Kingstown II Supreme Court Stay, 65 A.3d at 483. Since we now hold that the town was justified in implementing the three-platoon structure, it follows necessarily that the injunction should be vacated. Accordingly, we need not reexamine any procedural improprieties in issuing the injunction alleged by the town.

**C**

**Scope of this Opinion**

The explicit scope of this opinion can only be stretched so far as to review the Superior Court decision in North Kingstown II, which, by its own terms, only addressed the 2011-2012 Arbitration Panel and related declaratory relief. We recognize, however, that there are still matters pending between these parties, including unresolved counts on the town's amended complaint filed on September 24, 2012 relating to the 2012-2013 Arbitration Panel. This opinion does not address those unresolved counts.

Nonetheless, we reiterate that "the opinions of this Court speak forthrightly and not by suggestion or innuendo * * * [and it is not] the role of the trial justice to attempt to read between the lines of our decisions." Pleasant Management, LLC v. Carrasco, 960 A.2d 216, 223 (R.I. 2008) (quoting Fracassa v. Doris, 876 A.2d 506, 509 (R.I. 2005)).[17] Thus, to the extent that the salient factual circumstances surrounding the 2012-2013 Arbitration Panel parallel those of the

---

[17] While we may disagree with some of his conclusions, we note that, as a whole, the trial justice carried out his judicial role in an admirable manner as he sifted through the issues raised by this pell-mell of a protracted litigation.

2011-2012 Arbitration Panel, the Superior Court need not engage in needless wheel-spinning to determine the outcome.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court in part, reverse in part, and remand the papers to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Town of North Kingstown v. International Association of Firefighters, Local 1651 AFL-CIO, et al.

**CASE NO:** No. 2013-44-Appeal.
No. 2013-66-Appeal.
No. 2013-96-Appeal.
WC 12-542

**COURT:** Supreme Court

**DATE OPINION FILED:** January 9, 2015

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Town:  Daniel K. Kinder, Esq.

For Union:  Elizabeth A. Wiens, Esq.